0099

STATE of South Carolina, ex rel. Daniel R. McLEOD, Attorney General, Respondent, Cross-Appellant, v. C & L CORPORATION, INCORPORATED, L. G. Funderburk, W. L. Cooper, Jr., Wayne C. Cooper d/b/a Wayne Cooper Real Estate Company, and Evelyn C. Cooper, of whom C & L Corporation, Incorporated, and Wayne C. Cooper, are Appellants, Cross-Respondents, and L. G. Funderburk and W. L. Cooper, Jr., are Cross-Respondents.

(313 S. E. (2d) 334)

Court of Appeals

*Frank B. Register, Jr.*, Lexington, *for appellant C & L Corp., Inc.*

*James E. Hunter*, West Columbia, *for appellant Wayne C. Cooper.*

*Atty. Gen. T. Travis Medlock, Retired Atty. Gen. Daniel R. McLeod*, and *Asst. Attys. Gen. W. Joseph Isaacs* and *C. Richard Kelly*, Columbia, *for respondent, cross-appellant.*

Feb. 24, 1984.

BELL, Judge:

These cross appeals arise from an action brought by the Attorney General under the South Carolina Unfair Trade Practices Act. L. G. Funderburk and W. L. Cooper, Jr., were granted summary judgment dismissing them from the action. Thereafter the case was heard by a special referee. The circuit court confirmed the referee's finding that C & L Corporation and Wayne Cooper had engaged in deceptive and unfair trade practices in the sale of real estate to members of the general public and assessed civil fines against them as provided by the Act. From that order C & L and Wayne Cooper appeal. The Attorney General cross appeals from the order granting summary judgment to Funderburk and W. L. Cooper and from the failure of the trial court to award him certain costs of the action. We affirm the judgment against C & L and Wayne Cooper. We reverse and remand the summary judgment order, but affirm on the issue of costs.

The case is brought to us on a voluminous record. In addition to a three volume transcript of over 1,200 pages, the parties, among them, filed one hundred and fifty-five exceptions to the order of the circuit court. Thirty-eight of these exceptions are argued in eight briefs, some of them lengthy and unduly repetitious. Despite the prolixity of the litigants, the facts and issues involved are few and fairly straightforward.

C & L Corporation was formed by Funderburk and W. L. Cooper for the sole purpose of developing and selling a real estate subdivision known as Green Briar in rural Lexington County. The project was conceived by Wayne Cooper, a licensed real estate broker and the brother of W. L. Cooper. Pursuant to an oral agreement among Funderburk and the two Coopers, C & L contracted with Wayne Cooper to lay out the subdivision and sell the lots for C & L. Lots were to be sold by installment purchase contracts under which title to the property would not be conveyed by C & L until all payments on the sales price had been made by the purchaser. Wayne Cooper was to make all collections on the installment contracts for C & L. For his services, C & L agreed to pay Wayne Cooper a commission of ten percent of the gross sales price on each lot and an additional five percent of the gross collections. C & L opened a bank account in its name for deposit of the

moneys. Wayne Cooper was responsible for direct deposit to the account.

During 1973 Wayne Cooper sold a number of lots in Green Briar. The sales contracts invariably listed C & L as the "Seller" and were signed for the corporation by Wayne C. Cooper as "Agent." Wayne Cooper collected the money and deposited it in C & L's bank account after deducting his commissions. When C & L later conveyed the lots, these contracts were expressly acknowledged as contracts of the corporation by the sworn written statement of Funderburk, acting in his capacity as president of C & L.

It is not seriously contested that C & L began selling lots in Green Briar in 1973 in violation of a county subdivision ordinance. The ordinance required C & L, among other things, to construct roads and drainage in accordance with a county approved preliminary plat. In 1973 county officials notified W. L. Cooper in writing on more than one occasion that C & L was in violation of the subdivision ordinance. Nevertheless, with the knowledge of C & L, sales of the lots went forward in plain violation of the law.

The referee and the circuit court also found that sales agents in the employ of Wayne Cooper made various false representations in order to induce the purchase of lots in Green Briar during 1973. The sales agents told prospective buyers whatever they felt the buyers wished to hear in order to conclude a sale. Promises that the roads were to be paved were most frequently made, but there were also representations as to drainage, streetlights, sewage, city water, access roads, and school bus routes. None of these amenities was ever provided. The contracts of sale entered into with the buyers contained no clause by which C & L sought to disclaim liability for the misrepresentations or unauthorized acts of Wayne Cooper of his sales agents.

On the evidence presented, the referee and the circuit judge found that Wayne Cooper was the agent of C & L in making the sales. They further found eleven specific instances of misrepresentation in the sale of lots at Green Briar. However, they found that C & L had no actual knowledge of the misrepresentations, which were made by Wayne Cooper's salesmen. On these facts, the circuit court concluded that Wayne Cooper and C & L violated the Unfair Trade Practices Act (the

Act) and held them jointly and severally liable to pay civil fines of $55,000 plus certain costs.

## I.

The first issue on appeal is whether the plaintiff must prove the elements of common law deceit in order to establish a violation of the Act. We hold that the common law elements of deceit need not be proved. The Act provides that:

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

§ 39-5-20(a), Code of Laws of South Carolina, 1976. Since the Act is modeled after § 5(a)(1) of the Federal Trade Commission Act (the FTC Act),[1] the courts of this State are to be guided by Federal Trade Commission and federal judicial interpretations of the FTC Act. Code § 39-5-20(b).

Federal courts have held that unfair or deceptive acts as defined in the FTC Act need not constitute ordinary fraud. *Federal Trade Commission v. Algoma Lumber Co.*, 291 U. S. 67, 54 S. Ct. 315, 78 L. Ed. 655 (1934); *D.D.D. Corp. v. Federal Trade Commission*, 125 F. (2d) 679 (7th Cir. 1942). Under the statute there is no need to show that a claim or representation was intended to deceive, but only that it had the capacity or effect or tendency to deceive. *Id.*

State courts have also refused to link proof of unfair or deceptive trade practices to proof of common law fraud. *See e.g., Hardy v. Toler*, 288 N. C. 303, 218 S. E. (2d) 342 (1975); *Heller v. Silverbranch Construction Corp.*, 376 Mass. 621, 382 N. E. (2d) 1065 (1978); *see also*, Day, "The South Carolina Unfair Trade Practices Act: Sleeping Giant or Illusive Panacea?" 33 S. C. L. Rev. 479, 482 (1982).

We hold that the Act creates new substantive rights by making unlawful conduct which was not actionable under the common law. Accordingly, proof of common law fraud is not required to establish a violation of the Act.

## II.

The next issue is whether the circuit court erred in finding that Wayne Cooper was the agent of C & L. C & L argues that

---

[1] 15 U. S. C. 45(a)(1).

it cannot be held liable on an agency theory because Wayne Cooper was an independent contractor.

An independent contractor can also be an agent; the two are not mutually exclusive. *Commonwealth v. Minds Coal Mining Corp.*, 360 Pa. 7, 60 A. (2d) 14 (1948); Restatement (Second) of Agency § 2(3) (1958). One who is appointed to establish a contractual relationship between the principal and a third person is an agent. *Peeples v. Orkin Exterminating Co.*, 244 S. C. 173, 135 S. E. (2d) 845 (1964). Since Wayne Cooper was appointed by C & L to enter into sales contracts binding between C & L and third persons, the relationship here was undoubtedly one of agency.

C & L also argues that the testimony of three witnesses, Pettit, Ford, and Compton, was improperly admitted to establish agency. The testimony of these witnesses tended to prove, among other things, that Wayne Cooper considered C & L responsible for the failure to construct the promised improvements in the subdivision, particularly the roads. Their testimony also showed that C & L, by its conduct, admitted responsibility, as the developer of the subdivision, for failure to comply with county subdivision regulations relating to roads and drainage before authorizing the sale of lots in 1978. C & L argues that testimony as to events in 1975 is irrelevant in establishing agency at the time the misrepresentations occurred in 1973.[2]

---

[2] This argument is not properly raised by any of C & L's eighty-three exceptions, but appears for the first time in its brief. The brief indicates that the argument relates to Exception No. 2, which states:

> That the Referee and the Trial Judge erred in admitting into evidence and considering matters that were irrelevant and immaterial to the issues joined in the pleadings.

This exception violates Rule 4, Section 6, Rules of Practice of the Supreme Court of South Carolina, because it fails to put the court and opposing parties on notice as to what evidence is claimed to be irrelevant and immaterial and why. *Solley v. Weaver*, 247 S. C. 129, 146 S. E. (2d) 164 (1966). However, the Attorney General did not specifically object to Exception No. 2, choosing instead to lodge a blanket objection to all 149 of appellants' exceptions, some of which are clearly proper. Had a proper objection been made to this specific exception, we would not have considered C & L's argument on the point. The Attorney General's failure to make specific objections to the exceptions burdens the court as much as the appellants' improper exceptions. This type of advocacy by both sides contributed to the excessively voluminous briefs and transcript and a great deal of unnecessary work for the Court. We note the problem because the violation of the rule was flagrant in this case.

In our judgment the testimony was admissible. It related to the failure of C & L, as the developer of the subdivision, to take legally required action in 1973 before lots were sold. It tended to show the defendants themselves regarded C & L, not Wayne Cooper, as the entity with ultimate legal liability for the subdivision in 1973. Thus, it had some probative value in showing the parties' own understanding that the relationship between C & L and Wayne Cooper was one of agency in 1973.

Even if it were assumed the testimony of these witnesses was inadmissible to show agency, the error was not prejudicial. The agency relationship was fully established by other evidence in the record. Therefore, admission of the disputed testimony, if erroneous, was harmless, especially since this was a nonjury trial. *Ross v. Jones,* 58 S. C. 1, 35 S. E. 402 (1900); *In the Matter of Peirce,* 53 N. C. App. 373, 281 S. E. (2d) 198 (1981).

### III.

C & L and Wayne Cooper next claim they are not liable under the Act for the misrepresentations of the salesmen, since they were made without their knowledge. C & L further argues that because it had no knowledge of the misrepresentations, it cannot be held liable under the theory of ratification. These arguments have no merit.

In our opinion actual knowledge is not required under the Act to hold a principal liable for the misrepresentations of his agent. At common law actual knowledge is not necessary to hold a principal liable, if misrepresentations are made by the agent while acting within the scope of his agency. *See, West v. Service Life & Health Insurance Co.,* 220 S. C. 198, 66 S. E. (2d) 816 (1951); *see also,* Restatement (Second) of Agency § 261, comment a (1958). The Act should not be construed to increase the plaintiff's burden of proving liability. Its purpose is to give additional protection to the victims of unfair trade practices, not to make a case harder to prove than it would be under common law principles. Consistent with this policy, the federal courts hold that actual knowledge of the principal is not necessary to hold him liable for the acts of his agent committed within the scope of authority. *Goodman v. Federal Trade Commission,* 244 F. (2d) 584 (9th Cir. 1957).

C & L authorized Wayne Cooper to sell lots in Green Briar. Wayne Cooper in turn authorized the salesmen to assist him. The misrepresentations were made during negotiations for sale of the lots and thus were made while the salesmen were acting within the scope of the salesmen's and Wayne Cooper's actual authority. As principals, both C & L and Wayne Cooper, are liable regardless of their knowledge.

Furthermore, the theory of ratification is not necessary to hold C & L liable. Wayne Cooper and his salesmen were acting with authority from C & L when they sold the lots. Regardless of any subsequent ratification, a principal is liable to third persons for the frauds, deceits, concealments, misrepresentations, negligences and other malfeasances and omissions of duty of his agent acting within the scope of his agency, although the principal did not authorize, participate in, or know of such misconduct. *Reynolds v. Witte*, 13 S. C. 5 (1879); *Williams v. Commercial Casualty Insurance Co.*, 159 S. C. 301, 156 S. E. 871 (1931). The same rule is applicable to the misrepresentations of subagents. *See,* Restatement (Second) of Agency § 264 (1958). For this reason, it is immaterial whether C & L ratified the misrepresentations.

## IV.

Finally, C & L and Wayne Cooper argue that the circuit judge abused his discretion by levying an excessive fine against them. In essence, they claim that the salesmen who made the misrepresentations are escaping sanction, while the defendants, who did not make the statements, are being punished.

The Act gives the court discretion to impose a civil penalty not exceeding $5,000 per violation. § 39-5-110(a), Code of Laws of South Carolina, 1976. Here the circuit judge found eleven violations and imposed a $5,000 penalty for each, a total of $55,000.

There was no error of law in imposing a fine within the limits authorized by the act. Within those limits, the amount of the fine was a matter of the judge's discretion. *State v. Sheppard*, 54 S. C. 178, 32 S. E. 146 (1899). The party challenging a discretionary ruling of the trial court has the burden of showing a clear abuse of discretion. *Watson v.*

*U. S. Rubber Co.*, 260 S. C. 129, 194 S. E. (2d) 395 (1973). That burden has not been carried in this instance.

## V.

The main issue presented by the Attorney General's cross appeal is whether the circuit court erred in granting summary judgment to Funderburk and W. L. Cooper individually. We reverse the granting of summary judgment.

As a threshold matter, C & L argues that the appeal from the summary judgment is untimely. The order of summary judgment was entered on June 2, 1978. Funderburk and W. L. Cooper accepted service of the Attorney General's notice of intent to appeal on June 12. This notice was never filed with the Supreme Court. By letter dated July 10, 1978, the Attorney General informed counsel for Funderburk and W. L. Cooper that he had decided not to appeal from the order granting summary judgment.

After the circuit court issued its final order on September 22, 1980, C & L served a notice of intent to appeal on September 24, 1980. The following day the Attorney General served notice of intent to appeal on the attorney for C & L, Funderburk, and W. L. Cooper, and the attorney for Wayne Cooper. Neither notice named Funderburk and W. L. Cooper as parties in the caption. The Attorney General thereupon filed a motion to amend his notice to correct the caption and to incorporate his prior notice of appeal from the summary judgment order. In their return to the motion, Funderburk and W. L. Cooper moved to dismiss the appeal from the summary judgment order on the ground that the summary judgment was a final order from which an appeal had not been perfected. The Supreme Court granted the motion to amend the caption and denied the motion to dismiss the appeal from the summary judgment. The case was later transferred to this Court.

The Supreme Court's ruling on the motion to dismiss the appeal decides the question of whether the summary judgment issue is properly presented for our review. It is the law of this case as declared by the Supreme Court and is binding on this Court. When multiple defendants are joined in the same action, an order dismissing some but not all of them is ordinarily not final or appealable. *Derby*

*Road Building Co. v. Louisville Gas & Electric Co.,* 299 S. W. (2d) 122 (Ky. 1957); *Pan American Petroleum Corp. v. Texas Pacific Coal & Oil Co.,* 159 Tex. 550, 324 S. W. (2d) 200 (1959); *Burleson v. Canada,* 285 F. (2d) 264 (4th Cir. 1961). Upon appeal from the final judgment the appellate court may review any intermediate order involving the merits and necessarily affecting the judgment. § 18-1-130, Code of Laws of South Carolina, 1976; *McCrady v. Jones,* 36 S. C. 136, 174-178, 15 S. E. 430, 444-445 (1892). As a general rule, notice of appeal from the final judgment brings before the appellate court prior unappealed orders and rulings which affect the judgment. *Cf., Foman v. Davis,* 371 U. S. 178, 83 S. Ct. 227, 9 L. Ed. (2d) 222 (1962); *Burtell v. First Charter Service Corp.,* 76 Ill. (2d) 427, 31 Ill. Dec. 178, 394 N. E. (2d) 380 (1979); *Smith v. Independent Life Insurance Co.,* 43 N. C. App. 269, 258 S. E. (2d) 864 (1979). The Attorney General's appeal from the final order in this case was sufficient to bring the intermediate orders granting summary judgment before us for review, provided, of course, proper exception was taken to the granting of summary judgment. The Attorney General did file exceptions to the granting of summary judgment.

■ Turning to the merits of the appeal, we find the summary judgment was erroneously granted. The Act authorizes the Attorney General to bring an action against "any person" engaged in unfair or deceptive trade practices. Code § 39-5-50. The word "person" is defined broadly to include "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations and any other legal entity." Code § 39-5-10. "Any person," as so defined, is subject to civil penalties for willful violation of the Act. Code § 39-5-110. The Attorney General attempted to hold Funderburk and W. L. Cooper liable for violations by C & L on a theory that they were "controlling persons" of the corporation. We agree that the broad definition of "person" in the Act reaches controlling persons of a corporation.

■ Under the controlling person doctrine, both the corporation and its controlling persons are liable for a corporate violation of the Act. *Cf., Federal Trade Commission v. Standard Education Society,* 302 U. S. 112, 58 S. Ct. 113, 82 L. Ed. 141 (1937); *Consumer Sales Corporation v. Federal Trade Commission,* 198 F. (2d) 404, 407-8(2d Cir. 1952), *cert.*

*denied,* 344 U. S. 912, 73 S. Ct. 335, 97 L. Ed. 703 (1953); *Benrus Watch Co. v. Federal Trade Commission,* 352 F. (2d) 313, 325 (8th Cir. 1965) *cert. denied,* 384 U. S. 939, 86 S. Ct. 1457, 16 L. Ed. (2d) 538 (1966); *Sunshine Art Studios, Inc. v. Federal Trade Commission,* 481 F. (2d) 1171, 1175 (1st Cir. 1973). A controlling person is one who formulates and directs corporate policy or who is deeply involved in the important business affairs of the corporation. *Id.*

The pleadings admit that Funderburk and W. L. Cooper were officers and sole shareholders of C & L. These facts alone are sufficient to create a reasonable inference that they were controlling persons. Thus, at the very least, a dispute as to a material issue of fact existed, making summary judgment improper. *Duane v. Presley Construction Co., Inc.,* 270 S. C. 682, 244 S. E. (2d) 509 (1978). Accordingly, the Attorney General was entitled to go to trial on the issue of whether Funderburk and W. L. Cooper were controlling persons of C & L and thereby liable for corporate violations of the Act. Since the granting of summary judgment foreclosed litigation of the question, the case must be remanded for trial of this issue.

### VI.

Finally, the Attorney General argues that the trial judge erred in refusing to assess against C & L and Wayne Cooper the costs of depositions, witness fees, and certain filing fees. The master recommended assessing costs of the action, including court reporter's fees, referee's fees and attorney's fees. The trial judge assessed only the costs of the referee and the court reporter. He also permanently enjoined Wayne Cooper and C & L from engaging in unfair and deceptive trade practices.

Under § 39-5-50(a), Code of Laws of South Carolina, 1976, when a permanent injunction has been issued in a final action under the Act, "reasonable costs shall be awarded to the State." In equity actions the awarding of costs is discretionary with the trial judge and will not be disturbed absent a clear abuse of discretion. § 15-37-10, Code of Laws of South Carolina, 1976; *Cauthen v. Cauthen,* 81 S. C. 313, 62 S. E. 319 (1908). Under § 39-5-50(a), the trial judge had discretion to

determine what costs were reasonable. We find no abuse of the discretion.

For these reasons, the order granting summary judgment to Funderburk and W. L. Cooper individually is reversed and the cause is remanded for trial on the issue of their liability as controlling persons of C & L. The judgment of the circuit court is affirmed in all other respects.

Affirmed in part; reversed in part and remanded.

SANDERS, C. J., and GARDNER, J., concur.