**Helen M. CLARKSON, Appellee,**

v.

**ORKIN EXTERMINATING COMPANY, INC., a Corporation, Appellant.**

**No. 84–1497.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 9, 1985.

Decided May 9, 1985.

Rehearing Denied July 12, 1985.

---

C. Rauch Wise, Greenwood, S.C. (Wise & Tunstall, Greenwood, S.C., on brief), for appellant.

Stuart G. Anderson, Jr., Greenville, S.C. (Anderson & Fayssoux, Greenville, S.C., on brief), for appellee.

Before RUSSELL and CHAPMAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

A jury awarded the plaintiff damages on three separate claims. She claimed breach of a contract to inspect for termites and to treat again if necessary. There was a claim of fraud and of a violation of South Carolina's Unfair Trade Practices Act. § 39–5–20(a), Code of Laws of South Carolina, 1976.

There was adequate proof that Orkin broke its contract, though an improper measure of damages was applied. There is no evidence in the record, however, to support the finding of fraud or a violation of the Unfair Trade Practices Act. Hence, we reverse in part and affirm in part, but remand the contract claim for an appropriate assessment of damages.

I.

In 1976 Mrs. Clarkson purchased a house. Orkin had contracted with her predecessor in title to retreat the house in the event that a termite problem developed. Orkin also promised, for a fee, to inspect the house yearly and, if necessary, retreat it for termites before certifying that the house remained free of termites.

In early 1983, Mrs. Clarkson offered her home for sale. When prospective purchasers noticed evidence of termite infestation, Mrs. Clarkson called Orkin and requested that they inspect the house. Orkin complied with her request and issued a report that the house was free of termites. The report also mentioned the presence of a moisture problem, which had been reported to Mrs. Clarkson on several earlier occasions but which remained uncorrected. For the moisture problem, Orkin had unsuccessfully attempted to sell a protective chemical treatment to Mrs. Clarkson.

The day after Orkin's 1983 inspection, Mrs. Clarkson had the house inspected by the representative of another exterminating company. He found two termite tunnels and damage from water. He attributed the water damage to a drainage problem and expressed the opinion that the water damage would progress unless there were alterations to a porch to prevent drainage of water into the basement.

After a contractor had made the necessary repairs and the recommended alterations, Mrs. Clarkson sought to have Orkin reimburse her for her entire cost of the reconstruction work. She also asked that Orkin reinspect the house and certify that the house was free of termite infestation. Orkin refused both requests.

A jury awarded Mrs. Clarkson $613.47 on the breach of contract claim, $551 on the Unfair Trade Practices Act claim and $1,148 actual damages and $5,000 punitive damages on the fraud claim. The district judge concluded that the Unfair Trade Practices Act claim was a willful one and tripled the award on that claim and ordered Orkin to pay the plaintiff's attorneys' fees.

II.

As proof of a violation of the South Carolina Unfair Trade Practices Act, Mrs. Clarkson points (1) to the fact that Orkin certified in 1983 that the house was free of termites when significant infestation was visible, and (2) the fact that Orkin on several occasions had attempted, though unsuccessfully, to sell to Mrs. Clarkson a "moisture problem treatment package" that would not have been an adequate corrective of an improper drainage problem.

It is abundantly clear that in its 1983 inspection Orkin's representative failed to discover termite infestation which

was present and visible. This, however, does not establish a violation of the South Carolina Unfair Trade Practices Act. It shows no more than that Orkin's representative was negligent or incompetent. Mrs. Clarkson had not directed his attention to the area where the infestation was present, though she did direct the attention of the other exterminator to that area.

▉ The South Carolina Unfair Trade Practices Act may be violated if there is "a claim or representation that had the capacity or effect or tendency to deceive." *State Ex Rel. McLeod v. C & L Corp., Inc.*, 280 S.C. 519, 313 S.E.2d 334 (1984). The plaintiff need not show intentional deception, but a plaintiff cannot prevail without showing at least a potential of deception.

All that Mrs. Clarkson showed, however, was that Orkin's representative was negligent or inept. He did not see what a thorough and careful inspection by a qualified person should have uncovered. Moreover, in this particular case, Mrs. Clarkson knew the true state of affairs, and Orkin's certification had no tendency to deceive her. She simply proceeded to have the repair work done.

There is no support in South Carolina law for the proposition that a service person violates the unfair trade practice statute if he performs his job poorly or overlooks something which should have attracted his attention. An explicit or implicit representation that he performed his job properly, if the fault is negligence or inattention, is simply not the kind of deceptive practice the statute was intended to reach.

▉ Nor can Mrs. Clarkson prevail on the theory that Orkin engaged in a deceptive practice in recommending a treatment for the moisture problem which may have been ineffective. A statutory prohibition of deceptive practices simply does not reach expected puffing of a vendor's product nor authorize an award of damages solely on the basis of testimony from a competitor that the product is ineffective.

▉ Mrs. Clarkson suffered no damage as a result of any representation by Orkin, and that fact is also fatal to her claims under the Unfair Trade Practices Act. Section 39–5–140(a) of the Code of Laws of South Carolina authorizes recovery only when the plaintiff has suffered "any ascertainable loss of money or property ... as a result of the use or employment by another person of an unfair or deceptive method, act or practice."

As to her water problem, Orkin duly alerted her to its presence. She never engaged Orkin to provide any treatment, however, and suffered no ascertainable loss of money or property by reason of the fact that Orkin may have misstated or overstated the effectiveness of the treatment it recommended. She also suffered no damage on the certification that the house was still free of termites. If Orkin had discovered and reported the infestation, it would have been required to provide retreatment and Mrs. Clarkson would have been required to replace the damaged wood. Her expense in replacing the damaged wood would have been neither more nor less than what she actually spent. She was informed the day after Orkin's inspection that she did have termite infestation and she acted to replace the bad wood with good, just as she would have if Orkin had reported the infestation one day sooner. Without damages she has no claim. *See* "South Carolina Unfair Trade Practices Act," 22 S.C.L.Rev. 767 (1970); Day, The South Carolina Unfair Trade Practices Act: Sleeping Giant or Illusive Panacea? 33 S.C.L.Rev. 479 (1982).

The plaintiff's fraud claim must fail for the same reasons. There is no proof of any intentional deception, and Mrs. Clarkson suffered no damages from the representations that were made.

### III.

▉ There is enough to support a finding of a contract violation. Orkin failed to retreat the house when a termite infestation was present, and it refused Mrs. Clarkson's subsequent request that it reinspect

and spray the house after the repairs had been made.

There is no claim that Mrs. Clarkson lost an opportunity to sell the house because of the termite problem. What she claimed was the cost of repairs and alterations. On the breach of contract claim, the jury assessed the damages at $613.47, which was precisely the cost to Mrs. Clarkson of replacing the wood damaged by the termites. In effect, the jury converted Orkin's retreatment contract into a repair contract.

■ Orkin offers its customers alternatives. It will promise and guarantee to provide retreatment if there is a later termite infestation. For a higher fee, it will promise and guarantee to effect necessary repairs after a termite infestation has occurred. Mrs. Clarkson's predecessor in title, and she, elected to take the lower option. In Orkin's guarantee to Mrs. Clarkson, there is an express recital of her waiver and release of Orkin from any liability for damage to the structure occasioned by termites. Mrs. Clarkson cannot now claim the benefits of a repair guarantee she chose not to purchase.

Mrs. Clarkson was entitled to a proper performance by Orkin of its contract, which was to inspect and treat again if an infestation was found. That promise was not properly performed, and Mrs. Clarkson is entitled to any damage she suffered by reason of that non-performance. Since she knew of the termite infestation one day after Orkin failed to detect it, her damage would apparently be limited to the cost of inspection by the other exterminator plus the cost of any retreatment she may have procured.

While we agree that the evidence supports a finding of a breach of contract, we remand that claim for further proceedings on damages as may be consistent with this opinion. Judgment in the plaintiff's favor on the unfair trade practice and fraud claims is reversed.

REVERSED IN PART; AFFIRMED IN PART, AND REMANDED.