**In re Oscar McDade DANIEL and Frances G. Daniel, Debtors.**

**John B. BUTLER, III, Oscar McDade Daniel, and Frances G. Daniel, Plaintiffs–Appellees,**

**v.**

**VANDERBILT MORTGAGE AND FINANCE, INC. and its subsidiary, LUV Homes, Inc., Defendants–Appellants.**

Civ. A. No. 7:91–3844–20.

United States District Court, D. South Carolina, Spartanburg Division.

March 10, 1992.

John K. Fort, Spartanburg, S.C., for plaintiffs-appellees.

Harold L. Swafford and Bradford P. Simpson, Columbia, S.C., for defendants-appellants.

## ORDER

HERLONG, District Judge.

This matter is before the court on appeal from the United States Bankruptcy Court pursuant to 28 U.S.C. § 158(a) and Bankruptcy Rules 8001 and 8002. Pursuant to Bankruptcy Rule 8013, on appeal the district court shall not set aside the findings of fact of the bankruptcy court unless clearly erroneous.

The defendants-appellants have appealed the order of the Honorable William Thurmond Bishop, United States Bankruptcy Judge for the District of South Carolina, which awarded the plaintiffs-appellees a judgment in the amount of Fifteen Thousand Five Hundred Nineteen Dollars ($15,-519.00).[1]

The case involves the repossession of a mobile home owned by the debtor, Frances G. Daniel ("Daniel"). On June 7, 1986, Daniel purchased a new mobile home from LUV Homes, Inc. ("LUV"). The home was financed through Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt"), which retained a security interest in the mobile home.

Daniel fell behind in her mobile home payments. On May 16, 1991, the mobile home was repossessed. On that day Daniel returned to the mobile home to find men attempting to repossess the home. The men had disconnected the sewer, water, power and phone. Daniel told the men to leave and that they could not take the home. The men called their supervisor, Joel LeMaster ("LeMaster"), who arrived on the scene shortly thereafter. LeMaster entered the mobile home, and Daniel told him that he could not repossess the mobile home. Daniel also told LeMaster that she wanted to talk with her attorney, William Mullins. Since she could not use the phone in the home, Daniel decided to travel a short distance to Mr. Mullins' office. She left her son in the mobile home with instructions not to allow the men to take the home. Daniel believed that LeMaster had agreed to wait until she returned before he took any further action.

LeMaster did not wait for Daniel to return. He and the other men proceeded with the repossession. After the home was hooked up to the moving truck, LeMaster entered the mobile home and told Mark Daniel, the Ms. Daniel's son, to leave the home or they would move it with him in it. Mark Daniel left the home, and LeMaster took the home away.

On May, 21, 1991, Daniel filed a petition under Chapter 13, Title 11 of the United States Code in the United States Bankruptcy Court for the District of South Carolina. John B. Butler, III was appointed Trustee. An adversary complaint was filed in the case on June 3, 1991. The Trustee and Debtors sued Vanderbilt and LUV for damages for wrongful repossession and unfair trade practices.

On August 30, 1991, an order was entered awarding the Daniels a judgment.

On appeal of this order, Vanderbilt and LUV have raised five issues, which will be addressed individually.

1. Did the Bankruptcy Court err in finding that the South Carolina Unfair Trade Practices Act is applicable in the factual scenario of this case?

First, Vanderbilt and LUV assert that repossessions are not covered by the South Carolina Unfair Trade Practices Act ("SCUTPA"). The SCUTPA states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." S.C.Code Ann. § 39–5–20(a) (1976). "Trade" and "Commerce" are defined to include "advertising, offering for sale, sale or distribution of any services and any property...." S.C.Code Ann. § 39–5–10(b) (1976). Vanderbilt and LUV assert that the repossession of the mobile home was not the conduct of trade or commerce. There is no binding precedent in South Carolina which states whether actions and practices of debt collection are covered by the SCUTPA.

---

1. The order originally awarded judgment in the amount of Sixteen Thousand One Hundred Nineteen Dollars ($16,119.00). By order entered October 21, 1991, Judge Bishop reconsidered his first order and reduce the amount of the judgment.

■ In construing the provision of the SCUTPA which declares certain unfair and deceptive acts unlawful, courts are to be "guided by the interpretations given by the Federal Trade Commission and the Federal Courts to § 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1))." S.C.Code Ann. § 39–5–20(b) (1976). The language of § 5(a)(1) of the Federal Trade Commission Act is substantially the same as § 39–5–20(a) in the SCUTPA.

"The deceptive acts or practices forbidden by the [Federal Trade Commission Act] include those used in the collection of debt." *Trans World Accounts, Inc. v. Federal Trade Comm'n*, 594 F.2d 212, 214 (9th Cir.1979); *See also Slough v. Federal Trade Comm'n*, 396 F.2d 870 (5th Cir. 1968); *Rothschild v. Federal Trade Comm'n*, 200 F.2d 39 (7th Cir.1952), *cert. denied*, 345 U.S. 941, 73 S.Ct. 832, 97 L.Ed. 1367 (1953). Therefore, the bankruptcy court did not err in finding that debt collection activities are covered by the Federal Trade Commission Act and pursuant to S.C.Code Ann. § 39–5–20(b), are covered by the SCUTPA.

■ To be actionable under the SCUTPA, the unfair or deceptive acts or practices must have an impact upon the public interest. *Noack Enterprises v. Country Corner Interiors*, 290 S.C. 475, 351 S.E.2d 347, 350 (Ct.App.1986). Unfair or deceptive acts or practices have an impact upon the public interest if the acts or practices have the potential for repetition. *Id.* 351 S.E.2d at 351. The evidence supports the bankruptcy court's finding that the acts in this case have the potential for repetition. Therefore, the court finds that the bankruptcy court did not err in finding that the SCUTPA applies to this case.

2. Did the Bankruptcy Court err in finding Vanderbilt's action sufficiently deceptive to be a violation of the South Carolina Unfair Trade Practices Act?

■ The SCUTPA may be violated if there is a representation that had the capacity or effect or tendency to deceive. *Clarkson v. Orkin Exterminating Co., Inc.*, 761 F.2d 189, 191 (4th Cir.1985). It does not need to be shown that the deception was intentional. *Id.* The bankruptcy court's finding that LeMaster's statements deceived Daniel into believing that the mobile home would not be taken is not clearly erroneous. The bankruptcy court did not err in finding that the acts were sufficiently deceptive to be a violation of the SCUTPA.

3. Did the Bankruptcy Court err in awarding treble damages and attorney's fees under South Carolina law?

■ The bankruptcy court found as a fact that there was a willful violation of the SCUTPA. That finding was based upon a "disregard for the law of proper repossession," "the clear act of misleading Ms. Daniel," and "forcing the son from the mobile home as it was being towed away." The finding of a willful violation cannot be said to be clearly erroneous.

If there is a finding of a willful violation of the SCUTPA, the court is required to award treble damages and attorney's fees and costs. S.C.Code Ann. § 39–5–140 (1976). Therefore, the bankruptcy court did not err in awarding treble damages and attorney's fees.

4. Did the Bankruptcy Court err in failing to find that the mobile home was in lawful possession of Vanderbilt at the time of the alleged violations?

■ The bankruptcy court found that when Daniel returned to the mobile home, the men were in the process of repossession. They had not removed the home from the premises. They had not even connected the home to the tow truck. Vanderbilt and LUV assert that because they had begun the repossession, they were in lawful possession of the home. They cite no law for this proposition. The court agrees with the bankruptcy court that Vanderbilt and LUV were not in legal possession when Daniel returned to the mobile home. The bankruptcy court did not err.

5. Did the Bankruptcy Court err in finding that Vanderbilt breached the peace and violated South Carolina law in repossessing the mobile home?

South Carolina law on repossession provides:

Upon the default by a consumer with respect to a consumer credit transaction, unless the consumer voluntarily surrenders possession of the collateral or rented property to the creditor, the creditor may take possession of the collateral or rented property without judicial process only if possession can be taken without entry into a dwelling used as a current residence and without the use of force or other breach of the peace.

S.C.Code Ann. § 37–5–112 (1976).

In this case, the bankruptcy court found that Daniel had not voluntarily surrendered possession of the mobile home, that LeMaster entered a dwelling used as the current residence of the Daniels, and that the repossession was made in breach of the peace. Vanderbilt and LUV have not taken issue with the finding that the home was not voluntarily surrendered.

■■■■ Vanderbilt and LUV assert that the entry into a dwelling only applies to the repossession of household goods. The statute does not make this distinction. The evidence is clear that LeMaster made an uninvited entry into the home at least once, to tell Mark Daniel to leave. The mobile home was the current residence of the Daniels. The bankruptcy court properly found that this was in violation of S.C.Code Ann. § 37–5–112.

■■■■ Breach of peace has been well defined in South Carolina as follows:

In general terms, a breach of the peace is a violation of public order, a disturbance of public tranquillity, by any act or conduct inciting to violence.

By "peace", as used in the law in this connection, is meant the tranquility which is enjoyed by the citizens of a ... community, where good order reigns among its members, which is the right of all persons in political society.... It is not necessary that the peace be actually broken to lay the foundation of a prosecution for this offense. If what is done is unjustifiable, tending with sufficient directness to break the peace, no more is required.

*Lyda v. Cooper,* 169 S.C. 451, 169 S.E. 236, 238 (S.C.1933) (citation omitted). The acts need no element of violence to constitute a breach of the peace. *Thompson v. Ford Motor Credit Co.,* 324 F.Supp. 108, 115 (D.S.C.1971).

The bankruptcy court found that the act of threatening Mark Daniel to leave the home constituted a breach of the peace and that the active protest of the Daniels was a sufficient disturbance of tranquillity to constitute a breach of the peace. This court agrees. The bankruptcy court did not err in finding that the repossession was made in breach of the peace.

Therefore, based on the foregoing the order of the United States Bankruptcy Court for the District of South Carolina is affirmed.

IT IS SO ORDERED.