21783

STATE of South Carolina, ex relatione Daniel R. McLEOD, Attorney General, Appellant, v. Leonard BROWN, Clarence S. Burnette, Jason M. Salyer, W. Richard James, and Associated Electronics, Inc., Defendants, of whom Leonard Brown, Clarence S. Burnette, W. Richard James, and Associated Electronics, Inc., are Respondents.
(294 S. E. (2d) 781)

*Atty. Gen. Daniel R. McLeod, Asst. Atty. Gen. W. Joseph Isaacs* and *Staff Atty. C. Richard Kelly,* Columbia, *for appellant.*

*Richard H. Warder, C. Carlyle Steele* and *J. D. Todd, Jr.,* Greenville, *for respondents.*

Aug. 24, 1982.

HARWELL, Justice:

The State appeals from an order granting summary judgment to respondent James and dismissing *sua sponte* its

complaint against all other respondents. We reverse and remand for trial.

Pursuant to South Carolina's Unfair Trade Practices Act (UTPA), S. C. Code Ann. § 39-5-10, et seq. (1976), the State initiated this action alleging that the respondents were engaged in the manufacturing, promotion, distribution, and sale of transient voltage surge suppressors as devices capable of reducing the amount of electricity used and/or billed for in the average household or business. The State prayed that the court enjoin the respondents from continuing the business and impose a civil penalty of $5,000 for each unfair and deceptive act or practice alleged; that it issue an order requiring respondents to make restitution to anyone in South Carolina who had suffered an ascertainable loss because of respondents' alleged deceptive acts; and that it award the State costs for bringing the action. Respondents denied any violations of law.

The trial court acknowledged a factual question concerning the capacity of transient voltage surge suppressors to reduce electricity bills of purchasers. Nevertheless, the court concluded that respondent James should be awarded summary judgment because (1) he was never a controlling person of the corporation which marketed the devices and (2) any connection he had with the sale of the device had ceased *prior* to this action's commencement.

Summary judgment should be granted *only* where it is ■■ perfectly clear that *no* issue of fact is involved. *Vaughn, et al. v. A. E. Green Co., Inc.*, 287 S. E. (2d) 493, S. C., 1982; *Murphy v. Hagan*, 275 S. C. 334, 271 S. E. (2d) 311 (1980). In his deposition, respondent James attempted to minimize his role in Energymizer System of America, Inc. (EMSA), which was incorporated to own, sell and distribute the energymizer system, and Transcontinental Sales, Inc., which was incorporated to own, operate, market, distribute, buy, and sell energy saving devices. On March 9, 1977, James' former secretary and lawyer incorporated Transcontinental Sales, Inc. However, James' secretary stated in her deposition that Mr. James had his lawyer and herself sign the Articles of Incorporation, but that she understood the company was to be Mr. James' holding company. She had no further knowledge of the company. In a notarized statement, James requested that his

automobile be registered in the name of his "self-owned" company, Transcontinental Sales, Inc. On June 1, 1977, EMSA was incorporated by respondent Brown and Mrs. Dorothy Irvin. James stated in his deposition that he had no knowledge of EMSA's incorporation; however, as an initial investor, he owned 25% of EMSA's stock. Additionally, several people involved with EMSA stated that James was actively involved in running the company. He helped arrange credit financing for the sale of EMSA's products, told people he was "General Manager" of the company, and had business cards showing him to be in "Regional Sales" for EMSA.

At the least, we believe an issue of fact exists concerning James' role as a controlling person of either or both Transcontinental Sales, Inc. and EMSA.

In addition to granting summary judgment to James, ■■ the trial court dismissed *sua sponte* the action against all other respondents. We conclude that the trial court erred by dismissing the action on its own motion without proper notice to appellant. In *State v. Parker*, 7 S. C. 235 (1875), the trial court had vacated an arrest warrant and dismissed a summons and complaint *sua sponte*. The Court stated:

The circumstance that it was not asked for on behalf of the party for whose benefit it was made cannot properly be passed without notice. It is a dangerous innovation subversive of the conception of the proper limits of judicial authority entertained by our laws. 7 S. C. at 240.

We believe that an order substantially affecting a party's rights should not be made in a case without notice to the party prejudiced by it and an opportunity to be heard. *See, Ex Parte Hart*, 190 S. C. 473, 2 S. E. (2d) 52 (1939); *Varser v. Smith*, 187 S. C. 328, 197 S. E. 394 (1938); *State v. Port Royal & A. R. Co.*, 45 S. C. 464, 23 S. E. 380 (1895).

One ground for both the summary judgment and the ■ dismissal was that the issue was moot because none of the respondents were still engaged in the alleged unlawful practices at the time of the hearing. A review of the Unfair Trade Practices Act rveals that there is no requirement that the defendant still be engaged in the allegedly unlawful acts or practices. S. C. Code Ann. § 39-5-50(a) au-

thorizes the Attorney General to commence an action whenever he has reasonable cause to believe that any person is using, *has used*, or is about to use any prohibited act or practice. Also, S. C. Code Ann. § 39-5-110(a) authorizes a court to impose a civil penalty against any person who is willfully using or who *has willfully used* a prohibited method or act. Therefore, this ground for summary judgment and dismissal was based upon an erroneous interpretation of the Act.

The trial court's second ground for dismissal was the State's alleged inability to prove fraud or to demonstrate irreparable harm or damage to any citizen. Neither of these is a prerequisite to an action under the Unfair Trade Practices Act. The South Carolina Legislature directed that the courts be guided in construing the UTPA by the interpretations given by the Federal Trade Commission and by the Federal Courts to the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1). S. C. Code Ann. § 39-5-20(b). *United States Retail Credit Association, Inc. v. F. T. C.*, 300 F. (2d) 212, 221 (4th Cir. 1962) held that:

> [I]t is in the public interest generally to prevent the use of false and misleading statements in the conduct of business . . . and actual deception need not be shown; a finding of a tendency to deceive and mislead will suffice.

And in *Royal Oil Corp. v. F. T. C.*, 262 F. (2d) 741 (4th Cir. 1959), the Fourth Circuit Court of Appeals held that the requisite capacity to deceive could be found without evidence that anyone was actually deceived.

Therefore, we conclude the granting of summary judgment to respondent James and the dismissal of the action against all other respondents were error.

Reversed and remanded for trial.

LEWIS, C. J., and LITTLEJOHN and GREGORY, JJ., concur.

NESS, J., concurs and dissents.

NESS, Justice (concurring and dissenting):

I concur in the majority view with the exception of the ruling as to the respondent Richard James to which I dissent.

My view is that James is in a different position than the

other respondents, in that there is no proof he had any direct connection with the respondent corporation.

At the outset of the litigation, the attorney for James moved to have the complaint made more definite and certain based on the fact that James had worked at Carolina Tool and Equipment, Inc. exclusively for the year immediately preceding the filing of the complaint. The attorney general agreed to drop James from any restraining order until he could make a "prima facie showing that James *is still engaged* in the conduct described in the complaint." (Emphasis added) (Tr. p. 223, from the order of Judge Price of June 26, 1979).

There is no contention that James is now engaged in such conduct, if indeed he ever was. However, appellant contends James was "a controlling person" of Energymizer Systems of America (EMSA) and thus should be liable for the acts of that Corporation.

It is significant that the attorney general has seen fit to make neither EMSA nor Transcontinental Sales, Inc. a party to this action.

For some inexplicable reason, James's motion for summary judgment is not printed in the transcript, despite the fact that there are 308 printed pages.[1] However, the trial court's order granting James's motion reveals that it is based upon the fact that James was not a controlling person in either the respondent, Associated Electronics, Inc. or EMSA. There is evidence that James at one time had some stock in EMSA which was in trust for his two minor children, but this stock was disposed of months before this action was commenced. This stock ownership never constituted control of EMSA and at most, would have been a twenty-five (25%) per cent interest.

The majority opinion holds James was actively involved in running EMSA, relying upon the affidavit of Martin A.

---

[1] Here the attorney general has printed a 308 page transcript rather than reproducing the same at the much more economical process now allowed by the Rules of the Court. He has also filed 115 pages of so-called exhibits in this Court. This litigation and its costs have certainly been burdensome to the respondent James and to the people of South Carolina as well. The reason for all this escapes the writer of this opinion in view of the fact that James has had no connection with any of the matters involved for many months prior to the commencement of the action.

Greenberg. (Tr. p. 50). Greenberg states James was one of the four principals in that Corporation and it "appeared" that was his only occupation.

The affidavit is full of hearsay and unsupported conclusions which would not be admissable into evidence and which would be in violation of Rule 44(d) of the Rules of Practice for the Circuit Courts of South Carolina.

The majority likewise relies upon the affidavit of Dan Wilson. (Tr. p. 51-52). It, too, is subject to the same frailties as the affidavit of Greenberg. For instance, Wilson's affidavit states, "it appeared to him at that time (August or September 1977) that Energymizer was controlled by Leonard Brown, Mrs. Ben Irvin, Phil Trammell and Dick James."

Harvey Olson gave an affidavit which is likewise deficient. (Tr. p. 53). This affidavit does, however, state that "to his knowledge, Mr. James was not associated with the selling end of Energymizer Systems of America, Inc. or with the Transcontinental Sales, Inc. which was to be the selling arm of Energymizer Systems of America, Inc."

Neither do other affidavits in the record give rise to any inference that James was in control of any corporation, much less the one which is a party to this litigation. There is simply no evidence whatsoever that James was in control of or associated with Associated Electronics, Inc. in a managerial position.

Summary judgment is a useful tool for ending costly and time-consuming litigation and should be granted where appropriate, as is the case here. The trial court correctly granted the motion for the respondent James for summary judgment and I would affirm as to him.