0549

STATE of South Carolina, ex rel. Daniel R. McLEOD, Attorney General, Respondent, v. VIP ENTERPRISES, INC., d/b/a CLOUT, David George, Judy George, Nor Hagy, Sidney Dye, Sherrie Maxedon, Toby Reese, Naida Jones and W. H. McKie, Appellants.

(335 S. E. (2d) 243)

Court of Appeals

*John A. Mason,* Columbia, *for appellants.*

*Atty. Gen. T. Travis Medlock, Asst. Deputy Atty. Gen., W. Joseph Isaacs,* and *Asst. Atty. Gen., C. Richard Kelly,* Columbia, *for respondent.*

Heard May 20, 1985.

Decided Sept. 9, 1985.

SHAW, Judge:

Respondent State of South Carolina brought this action on the relation of its Attorney General seeking an injunction and civil penalties for alleged violations of state trade and commerce laws, specifically, the sale of (1) contracts by

a pyramid club, and (2) business opportunities not registered with the Secretary of State.

Appellant VIP Enterprises, Inc. markets to the public its Clout merchandise discount card through a multi-level program. Appellants David and Judy George and Hagy are directors of VIP; appellants Dye, Maxedon, Reese, Jones, and McKie, are employees of the corporation.

The circuit court found (1) VIP's marketing program meets the definition of an unfair trade practice and contravenes the prohibitions of the South Carolina Unfair Trade Practices and Business Opportunity Acts, S. C. Code Ann. Sections 39-5-10 through 39-57-80 (Supp.), and (2) the individual appellants except McKie are controlling persons of VIP. The court issued its injunction and assessed penalties against all appellants. We affirm in part and reverse in part.

This appeal raises four questions; (1) whether VIP's marketing scheme constitutes an illegal pyramid, (2) whether VIP is subject to regulation under the South Carolina Business Opportunity Act, (3) whether the trial court erred in rejecting certain proffered testimony, and (4) whether certain of the appellants are controlling persons under the South Carolina Unfair Trade Practices Act.

VIP sells the Clout card for $25.00 and the right to sell Clout cards for an additional $50.00. Before November 15, 1982, a person could not buy a card without also buying the right to sell cards. The trial court found this requirement is still in effect. Before November, 1982, when an agent made a sale he received $10.00 from the sale of the card and another $10.00 from the sale of the right to sell the card. Now when he makes a sale he receives $10.00 from the sale of the card and advancement points from the sale of the right to sell. When the agent, his buyers, and their buyers, accumulate 300 advancement points, he receives other commissions based on his and their sales. All commissions are received directly from the corporation.

I.

The Unfair Trade Practices Act provides (1) contracts between individuals and pyramid clubs are unfair trade practices, and (2) unfair trade practices are

unlawful. Sections 39-5-30 and 39-5-20(a). The Act also directs state courts to look for guidance to the Federal Trade Commission's interpretations of the federal Act. Section 39-5-20(b). Appellants argue their program is not a pyramid club as defined by the UTPA or the Commission.

## A.

Section 39-5-30 reads in part as follows:

Any contract or agreement between an individual and any pyramid club, or other group organized or brought together under any plan or device whereby fees or dues or anything of material value to be paid or given by members thereof are to be paid or given to any other member thereof, which plan or device includes any provision for the increase in such membership through a chain process of new members securing other new members and thereby advancing themselves in the group to a position where such members in turn receive fees, dues or things of material value from other members, is hereby declared to be an unfair trade practice.

Appellants argue their organization is not a pyramid under this provision because members receive commissions from VIP instead of "from other members." We disagree. Where in all other respects a plan meets the UTPA's description of a pyramid, the use of a corporation as a conduit will not place the plan beyond the reach of the Act.

## B.

The Federal Trade Commission has described pyramids as follows:

Such schemes are characterized by the payment by participants of money to the company in return for which they receive (1) the right to sell a product and (2) the right to receive in return for recruiting other participants into the program rewards which are unrelated to sale of the product to ultimate users.

*In re Koskot Interplanetary, Inc.,* 86 F.T.C. 1106, 1180 (1975), *aff'd mem. sub nom. Turner v. FTC,* 580 F. (2d) 701 (D.C. Cir. 1978).

Appellants argue their marketing scheme is not a pyramid under this definition because sales agents do

not receive rewards for recruiting new sales agents "unrelated to sale of the" card. We disagree. The trial court found VIP's policy a prospective sales agent must buy a card before the right to sell cards, continued at the time of trial. We find sufficient evidence to support this finding. The evidence is clear while the corporation may have stopped paying the $10.00 direct commissions to sales agents for recruiting new agents, the company has begun giving "advancement points" for each new sales agent recruited. Sales agent A thus receives "advancement points" not only for sales made by sales agent B, which he recruited, but also for sales made by sales agent C, recruited by sales agent B. Further, these advancements credits are "valuable" because they entitle sales agent A to other commissions. We hold this marketing scheme provides awards to agents not related to the sale of the Clout card. *Cf. In Re Amway Corp., Inc.*, 93 F.T.C. 618, 715-717 (1979).

## II.

The Business Opportunity Sales Act provides the sale of business opportunity not registered with the Secretary of State is an unfair trade practice. Sections 39-57-50(b), 39-57-80(e). Appellants argue their marketing plan is not a business opportunity as defined by the Act.

Section 39-57-20 reads in part as follows:

> "[B]usiness opportunity" means the sale ... of any products ... which are sold to the purchaser for the purpose of enabling [him] to start a business, and in which the seller represents: ... (4) That upon payment by the purchaser of a fee or sum of money whih exceeds fifty dollars to the seller, the seller will provide a sales program or marketing program which will enable the purchaser to derive income from business opportunity which exceeds the price paid for the business opportunity.

Appellants argue since VIP no longer requires the Clout card and the right to sell be purchased together for $75.00, the threshold dollar amount is not met. We disagree. The circuit court found from the evidence the corporation has not changed its policy to permit agents to buy the right to sell without buying the Clout card.

### III.

Appellants argue the court refused to let their witnesses testify regarding these policy changes. We disagree. Nothing in the record indicates appellants proferred additional witnesses. On the contrary, their counsel stated, "We do have several other witnesses ... but we believe their testimony will generally reflect what has already been said." The burden is on appellants to provide a sufficient record for review. *Wilson v. American Casualty Co.*, 252 S. C. 393, 166 S. E. (2d) 797, 798 (1969).

### IV.

The Unfair Trade Practices Act subjects to liability "any person" willfully using a method or practice declared unlawful by the Act. Section 39-5-110(a). The courts have imposed liability on controlling persons of offending corporations. *State ex rel. McLeod v. C & L Corp., Inc.*, 280 S. C. 519, 313 S. E. (2d) 334, 341 (Ct. App. 1984); *State ex-rel. McLeod v. Brown*, 278 S. C. 281, 294 S. E. (2d) 781, 782 (1982). "A controlling person is one who formulates and directs corporate policy or who is deeply involved in the important business affairs of the corporation." *C & L Corp.*, 313 S. E. (2d) at 341.

We hold appellants McKie, Maxedon, and Reese are not controlling persons of the corporation because the state has so conceded at oral argument. We hold Dye and Jones also are not controlling persons of VIP. The trial judge found these individuals were "salaried employees, agents and representatives of VIP hired to promote VIP's sales and operation(s) in South Carolina." The record is devoid of evidence these individuals either helped to formulate company policy regarding the marketing scheme or were involved in important corporate affairs. *C & L Corp.*, 313 S. E. (2d) at 341.

We, therefore, affirm the judgment of the circuit court against the appellants VIP Enterprises, Inc., David and Judy George, and Hagy. We reverse the judgment against Dye, Maxedon, Reese, Jones, and McKie.

Affirmed in part, reversed in part.

BELL and CURETON, JJ., concur.