0793

STATE OF South Carolina, ex relatione T. Travis MEDLOCK, Respondent v. NEST EGG SOCIETY TODAY, INC., Thomas Atkin, and Gary W. Meilahn, Appellants.

(348 S. E. (2d) 381)

Court of Appeals

*Merl F. Code* and *Jeffery Weston,* both of *Code & Weston, P.A.,* Greenville, *for appellants.*

*T. Travis Medlock, Atty. Gen.,* and *William K. Moore, Deputy Atty. Gen.,* Columbia, *for respondent.*

Heard May 21, 1986.

Decided Sept. 2, 1986.

BELL, Judge:

The State, on the relation of its Attorney General, brought this action for violation of the South Carolina Unfair Trade Practices Act[1] against Nest Egg Society Today, Inc., a Florida corporation, and two of its directors, Thomas Atkin and Gary W. Meilahn. The circuit court found the defendants had violated the Act by operating an unlawful pyramid scheme and issued a permanent injunction prohibiting them from conducting a pyramid club or similar organization within South Carolina. A separate hearing was subsequently held to determine whether the violation of the Act was willful. The court found a willful violation and assessed civil penalties of $45,000 jointly and severally against the defendants. They appeal. We affirm.

The evidence showed that Nest Egg was incorporated by Atkin and Meilahn, who are officers, directors, and shareholders of the corporation. Atkin and Meilahn are responsible for management and policy decisions of the corporation. They, with others, created the Nest Egg membership program which gave rise to this lawsuit.

Prior to the commencement of this action, Nest Egg was engaged in selling memberships in the corporation in South Carolina. Under the membership program, each member of the corporation was to "sponsor" three new members by selling them each a membership package furnished by the corporation. New members paid the sponsor $5.00 for the membership package. Included in the package was a "Membership Registration Form" containing a computerized sponsorship list of nine names of existing Nest Egg members. The person in the number one position on the list was designated the "Membership Coordinator." The person in the number nine position on the list was the "sponsor" who sold the new member the package.

The instructions in the membership package directed the new member to send a $5.00 money order to the person in the number one position on the list. This payment was described as "a mandatory one-time only *Management Bonus.*" The new member was also directed to send a $5.00 money order to Nest Egg to cover membership dues, together with a receipt for the money order sent to the Mem-

---

[1] Sections 39-5-10 through 39-5-160, Code of Laws of South Carolina, 1976.

bership Coordinator, and a completed Membership Registration Form.

If the new member complied with these instructions, Nest Egg sent him three new membership packages to sell. These membership packages contained a Membership Registration Form with a new computerized sponsorship list of nine names. The new member's name appeared as the "sponsor" in the number nine position on the new list and the person who sold him his membership package was advanced to the number eight position. All other persons on the list were advanced one position and the Membership Coordinator to whom the new member had sent the "Management Bonus" was deleted from the new list.

The rules of the membership program prohibited the use of any promotional material other than that furnished by Nest Egg. Any deviation from the rules would lead to cancellation of the member's participation in the membership program. If Nest Egg's instructions were followed, membership in the corporation would increase through a chain process of new members securing other new members, thereby advancing themselves on the sponsorship list to a position where they would receive a $5.00 management bonus from a potential 19,683 new members, for a total sum of $98,415.00 in management bonuses.

At the time of trial, Nest Egg had 9,039 members in South Carolina. These members had paid approximately $45,000 in membership dues to the corporation.

I.

Nest Egg does not appeal the judgment that its membership program is an unlawful pyramid scheme under Section 39-5-30, and thus constitutes a violation of Section 39-5-20, declaring unfair or deceptive practices in the conduct of trade or commerce to be unlawful. The main question on appeal is whether the circuit court erred in finding Nest Egg was guilty of a willful violation of the statute.

A.

Section 39-5-110 prescribes a civil penalty not exceeding five thousand dollars per violation if the court finds a defendant has willfully used a method, act, or practice declared

unlawful by Section 39-5-20.

Nest Egg argues that willfulness requires a specific intent to violate the law, which the State failed to prove on the part of Nest Egg or the individual defendants in this case.

At common law, the term "willful" connotes a determination to exercise one's own will in spite of and in defiance of the law. *State v. Alexander*, 48 S.C.L. (14 Rich.) 247 (1867). Conduct committed with a deliberate intention under such circumstances that a person of ordinary prudence would be conscious of it as an invasion of another's rights is "willful." *Rogers v. Florence Printing Co.*, 233 S. C. 567, 106 S. E. (2d) 258 (1958). The intent to violate the law or another's rights may be proved by circumstantial evidence. *Cf., State v. Carroll*, 277 S. C. 306, 286 S. E. (2d) 382 (1982).

Ordinarily, the word "willful" as used in a statute has the same meaning as it has at common law. *Reeves v. Carolina Foundry & Machine Works*, 194 S. C. 403, 9 S. E. (2d) 919 (1940). Accordingly, Nest Egg contends that the circuit court should have applied the common law definition of willfulness to the facts of this case. In view of the plain language of the Unfair Trade Practices Act, however, we are unable to sustain this contention.

Section 39-5-110(c) states:

> For the purposes of this section, a willful violation occurs when the party committing the violation knew or should have known that his conduct was a violation of § 39-5-20.

We hold that this definition creates a statutory standard of willfulness different from the common law standard. For purposes of Section 39-5-110, conduct is "willful" if the defendant "should have known" it violates Section 39-5-20. The standard is not one of actual knowledge, but of constructive knowledge. If, in the exercise of due diligence, a person of ordinary prudence engaged in trade or commerce could have ascertained that his conduct violates the Act, then such conduct is "willful" within the meaning of the statute.

Applying this standard of willfulness to the facts of the case, we think it is clear the defendants' violation of Section 39-5-20 was "willful." A person who exercised due diligence to ascertain whether the Nest Egg mem-

bership program violates the law in South Carolina would have no doubt that it is a prohibited pyramid plan. On its face, the Nest Egg program includes provisions for the increase of membership through a chain process of new members securing other new members as a means of advancing themselves in the group to a position where they receive money from other members. Since Section 39-5-30 declares such devices or plans a violation, per se, of Section 39-5-20, any person of ordinary understanding would know the Nest Egg program is unlawful. We, therefore, reject the defendants' contention that, as a matter of law, they were not guilty of a "willful" violation of the statute.

## B.

In a related argument, Nest Egg maintains that even if actual knowledge is not required to render a violation "willful," the State's evidence was insufficient to prove willfulness under a due diligence standard. For this reason, Nest Egg asserts the circuit court erred in denying its motion for a directed verdict.

The circuit court found that Nest Egg's method of conducting business in South Carolina is the precise conduct prohibited by Section 39-5-30. This finding is amply supported by Nest Egg's own promotional materials which were admitted into evidence without objection to prove the manner in which the Nest Egg membership program operated. Nest Egg admitted it had over nine thousand dues paying members in South Carolina. It is reasonably inferable from the facts admitted by Nest Egg that most of these members were participating in the membership program. The admitted facts also support the circuit court's finding that Nest Egg conducted a large scale, sophisticated pyramid operation using computerized membership lists. The court took judicial notice that practically every state, including Florida, the state in which Nest Egg was incorporated and is domiciled, prohibits pyramid schemes like the Nest Egg membership program. Nest Egg does not seriously contest the fact that pyramid clubs are almost universally prohibited by law. We sustain the circuit court's conclusion that these facts were sufficient to prove that Nest Egg and the individual defendants should have known the membership program violated the law in South Carolina.

## C.

Nest Egg emphasizes that the State introduced no new evidence at the trial on the issue of willfulness, but relied on the same evidence it presented in support of its motion for summary judgment. Since the motion for summary judgment was denied, Nest Egg argues that by entering judgment for the State, the trial judge overruled a prior order of another circuit judge in violation of Rule 60, Rules of Practice for the Circuit Courts of South Carolina. *See Perry v. Jones*, 17 S.C.L. (1 Bailey) 10 (1828); *Cook v. Taylor*, 272 S. C. 536, 252 S. E. (2d) 923 (1979); *State ex rel. Medlock v. Love Shop, Ltd.*, 286 S. C. 486, 334 S. E. (2d) 528 (Ct. App. 1985).

The denial of a motion for summary judgment is not an adjudication on the merits in favor of the party opposing the motion. *Geiger v. Carolina Pool Equipment Distributors, Inc.*, 257 S. C. 112, 184 S. E. (2d) 446 (1971). Thus, the denial of the State's motion was not a judicial determination that Nest Egg was innocent of a willful violation of the Act. Consequently, the trial judge did not transgress Rule 60 when he adjudicated the issue of willfulness at the trial stage. *Cf., Andrick Development Corp. v. Maccaro*, 280 S. C. 103, 311 S. E. (2d) 95 (Ct. App. 1984) (adjudication of an issue not previously decided by another judge is not a violation of Rule 60).

## D.

Nest Egg also argues that because the State relied on affidavits rather than live testimony at trial, it was deprived of the due process right to confront and cross examine witnesses against it.

The right of confrontation is guaranteed in state law by the Constitution of South Carolina. *See* Art. I, Section 14, Constitution of South Carolina, 1895, revised. Historically, the right of confrontation and cross examination has been held to apply in criminal prosecutions. *See State v. Hester*, 137 S. C. 145, 134 S. E. 885 (1926); *State v. Smith*, 230 S. C. 164, 94 S. E. (2d) 886 (1956).[2] Where the accused enjoys the

---

[2] The language of the original 1895 Constitution read: "In all criminal prosecutions the accused shall enjoy the right ... to be confronted with the witnesses against him. ..." Art. I, Section 18, Constitution of South Caro-

right to be confronted by the witnesses against him, affidavits are inadmissible in evidence on the question of guilt. *See State v. Hester, supra; State v. Smith, supra.*

Although the constitutional right to confrontation of witnesses has traditionally been limited to criminal prosecutions, our Supreme Court has also expressed disapproval of "trial by affidavit" in the civil context. The Court has suggested that confrontation and cross examination of adverse witnesses may be elements of a meaningful opportunity to be heard guaranteed by the Due Process Clause of the Constitution.[3] *See South Carolina National Bank v. Central Carolina Livestock Market, Inc.,* 345 S. E. (2d) 485 (S. C. 1986); *Simonds v. Simonds,* 232 S. C. 185, 101 S. E. (2d) 494 (1957); *Latham v. Town of York,* 210 S. C. 565, 43 S. E. (2d) 467 (1947); *Union Savings Bank v. Hubbard,* 138 S. C. 328, 136 S. E. 481 (1927). We, therefore, assume for the purposes of this opinion that the defendants were entitled as a matter of due process to have the State produce its witnesses at trial. The introduction of evidence by affidavit rather than live testimony accordingly deprived the defendants of the due process right to confrontation and cross examination.

Nevertheless, we hold this error in the admission of evidence does not warrant a reversal of the judgment. The disputed affidavits contained statements that the affiants, South Carolina residents, had purchased Nest Egg memberships on the basis of the promotional materials provided in the membership package. This testimony was cumulative to other evidence, admitted by Nest Egg, showing memberships had been sold in South Carolina and describing the membership program in detail. If we completely disregard the affidavits, the evidence is still sufficient to prove a willful violation of the Unfair Trade Practices Act. Thus, the asserted error in admitting the affidavits into evidence made no difference in the outcome and was harmless as a matter of law. *See State v. Miller,* 266 S. C. 409, 223 S. E. (2d) 774 (1976).

---

lina, 1895. This wording was identical to that of Amendment VI to the Constitution of the United States. The 1971 revision of Article I combined provisions of old Sections 18 and 25 into new Section 14. In the process of revision, the words "In all criminal prosecutions the accused shall ..." were changed to "Any person charged with an offense shall. ..."

[3] Art. 1, Section 3, Constitution of South Carolina, 1895, revised.

## II.

Atkin and Meilahn next argue that the court improperly assessed penalties against them as individuals. They contend the State produced no evidence that they, individually, conducted any activities on behalf of the corporation in South Carolina.

The argument is without merit. Atkin and Meilahn admittedly are officers, directors, and principal shareholders of the corporation. They admittedly make policy and management decisions for the corporation. They were admittedly personally involved in formulating the membership program which violates Section 39-5-20. Since they are both persons who formulate and direct corporate policy and are deeply involved in the important business affairs of Nest Egg, they are controlling persons of the corporation. *See State ex rel. McLeod v. C & L Corp.*, 280 S. C. 519, 313 S. E. (2d) 334 (Ct. App. 1984). As controlling persons, they are individually liable for corporate violations of the Act. *Id.* Accordingly, they are subject to the civil penalty provisions of Section 39-5-110. *Id.* The circuit court committed no error in assessing penalties against them individually.

## III.

Nest Egg's final argument for reversal concerns the circuit court's refusal to receive into evidence the depositions of Atkin and Meilahn.

The depositions were scheduled for August 22, 1984, in Miami, Florida. The State first received notice of the depositions on August 20, 1984, two days before they were to be taken. Attorneys for the State immediately advised Nest Egg's counsel that Circuit Court Rule 87 required at least ten days' notice of the taking of a deposition and that the State would be unable to be present at the depositions on such inadequate notice. Counsel for Nest Egg proceeded with the depositions without the presence of the State on August 22, 1984.

At trial, the State objected to the admission of the depositions into evidence on the ground that they were taken without proper notice to the adverse party. The circuit court refused to admit the depositions because of noncompliance with Rule 87(G) requiring at least ten days' notice to the

adverse party of the taking of a deposition.[4]

The admission or exclusion of evidence is a matter within the sound discretion of the trial judge and his ruling will not be overturned on appeal unless the appellant shows a clear abuse of discretion resulting in prejudice to him. *Crowley v. Spivey*, 285 S. C. 397, 329 S. E. (2d) 774 (Ct. App. 1985). As a matter of discretion, the trial judge may refuse to admit testimony as a sanction for failure to comply with the rules governing discovery in civil cases. *Moran v. Jones*, 281 S. C. 270, 315 S. E. (2d) 136 (Ct. App. 1984) (exclusion of witness not listed in answers to interrogatories).

In this case, Nest Egg plainly took the depositions of Atkin and Meilahn without giving the notice required by Rule 87(G). We find no abuse of discretion in the trial court's exclusion of the depositions for failure to comply with the Rule.

For the foregoing reasons, the judgment of the circuit court is

Affirmed.

SANDERS, C. J., and SHAW, J., concur.

---

[4] Rule 87(G) of the Circuit Court Rules has been superseded by Rule 30(b)(1), S. C.R. Civ.P. effective July 1, 1985. The new rule also requires ten days' notice of the taking of a deposition.