## 24090

Wanda PLOWMAN, Craig Plowman, David Koon, Terri Koon, Louise Paschal, Manora N. Gilmore, M. Whitfield Cheatham, Jr., Virginia Cheatham, Michael Peters, Mary Peters, Jewel C. Jacoby, Claudia Bedenbaugh, Irwin Barnes, Elsie Barnes, Jo A. Rogers, Pauline Trumble, Thomas Gillespie, Linda Gillespie, Janie M. Cade, Charles Clark, Diane Clark, William Thompson, and Marguerite Thompson, Plaintiffs, Of Whom Wanda Plowman, Manora N. Gilmore, Virginia Cheatham, Mary Peters, Jewel C. Jacoby, Claudia Bedenbaugh, Thomas Gillespie, Janie M. Cade, Charles Clark, William Thompson, are Appellants v. Thomas N. BAGNAL, J. Allen Shumaker, Duncan M. Lang, Innovative Developers, Inc., and J. Allen Shumaker Builder, Inc., Defendants, Of Whom Thomas N. Bagnal and Allen Shumaker, are Respondents.

(450 S.E. (2d) 36)

Supreme Court

*J. Lewis Cromer* and *Craig L. Berman*, both of *Cromer & Mabry*, Columbia, *for appellants*.

*Charles E. Carpenter, Jr., R. Davis Howser, Franklin J. Smith, Jr.*, and *Deborah L. Harrison*, all of *Richardson, Plowden, Grier & Howser*, Columbia, *for respondents*.

Heard Oct. 19, 1993; Decided June 13, 1994.

Reh. Gra. July 14, 1994; Ord. Adh. to Op. Oct. 19, 1994.

HARWELL, Chief Justice:

This is a private action for damages under S.C. Code Ann. § 39-5-140 (1985) of the South Carolina Unfair Trade Practices Act (UTPA). Appellants contend that the trial judge erred in ruling that in a private action, the "controlling persons" of a corporation are not personally liable as a matter of law for damages caused by the corporation's unfair trade practices. We disagree and affirm.

## I. *Facts*

Thomas Bagnal (Bagnal), J. Allen Shumaker (Shumaker), and Duncan Lang (Lang) formed Innovative Developers, Inc. (Innovative) for the purpose of developing and selling a real estate subdivision in Richland County known as Village Pond. Wanda Plowman and others (collectively "homeowners") purchased homes in Village Pond after they relied on several specific representations made by Innovative's agents. Many of the amenities promised by the agents were never provided.

The homeowners brought these misrepresentations to Innovative's attention. After no corrective action was taken, the

homeowners initiated this action alleging, among other things, that the defendants and their agents utilized unfair and deceptive practices to induce the homeowners to buy homes in Village Pond. At the close of the evidence, the homeowners moved for a directed verdict that Bagnal and Shumaker were "controlling persons" of Innovative and that, as such, they would be personally liable for Innovative's violations of section 39-5-140. The trial judge denied homeowners' motion on the ground that in a private action, controlling persons are not liable for the corporation's unfair trade practices merely because of their status. In accordance with that ruling, the trial judge also refused to instruct the jury that they could find Bagnal and Shumaker personally liable merely because were controlling persons of a corporation that had violated section 39-5-140. The trial judge submitted the case to the jury for determination of whether Innovative, Bagnal, or Shumaker, individually or collectively, violated the UTPA. The jury found that only Innovative had utilized unfair and deceptive trade practices in violation of the UTPA. The homeowners appealed.

## II. *Discussion*

The homeowners argue that "controlling persons" of a corporation, merely because of their status as such, are personally liable for corporate violations of the UTPA in a private action for damages under section 39-5-140(a). We disagree.

Section 39-5-140(a) provides:

> Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39-5-20 may bring an action individually, but not in a representative capacity, to recover actual damages. . . .

For the purposes of this section, "person" includes "natural persons, corporations, trusts, partnerships, incorporated or unincorporated association and any other legal entity." S.C. Code Ann. § 39-5-10(a) (1985).

When interpreting a statute, this Court's primary function is to ascertain the intention of the Legislature. *Gilstrap v. S.C. Budget and Control Board*, — S.C. —, 423 S.E. (2d) 101 (1992). The Court must give clear and unam-

biguous statutory terms their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's operation. *Id.*

The plain language of section 39-5-140 provides that any person is liable for damages resulting from their *use or employment* of unfair trade practices. The position urged by the homeowners imposes liability on "controlling persons" for all corporate violations of section 39-5-140 without regard to whether that person "used or employed" an unfair trade practice. It is well settled that corporate officers and directors are not liable for the tortious conduct of the corporation unless they commit, participate in, direct, or authorize the commission of a tort. *Hunt v. Rabon,* 275 S.C. 475, 272 S.E. (2d) 643 (1980). In accordance with this settled principle, we hold that in private actions under the UTPA, directors and officers are not liable for the corporation's unfair trade practices unless they personally commit, participate in, direct, or authorize the commission of a violation of the UTPA. *Accord Donsco, Inc. v. Casper Corp.,* 587 F. (2d) 602 (3rd. Cir. 1978) (corporate officer is individually liable for unfair competition in which he participates); *Eastern Star, Inc. v. Union Bldg. Materials Corp.,* 6 Haw. App. 125, 712 P. (2d) 1148 (1985) (corporate officer or director who participates in unfair or deceptive acts is jointly and liable with the corporation); *Moy v. Schreiber Deed Sec. Co.,* 370 Pa. Super. 97, 535 A. (2d) 1168 (1988) (corporate president could be held individually liable under the participation theory for acts of unfair competition which he personally committed); *Great American Homebuilders, Inc. v. Gerhart,* 708 S.W. (2d) 8 (Tex. Ct. App. 1986) (corporate officer who knowingly participates in deceptive trade practice may be held individually liable); *Grayson v. Nordic Constr. Co.,* 92 Wash. (2d) 548, 599 P. (2d) 1271 (1979) (en banc) (if corporate officer participates in violation of Consumer Protection Act, officer is liable for the penalties). Accordingly, we reject the homeowners' claim that controlling persons are, as a matter of law, always jointly and severally liable in a private action for corporate violations of the UTPA.[1]

---

[1] Additionally, we note that where the Legislature has seen fit to take the unusual step of providing for control person liability, it has done so explicitly. *See* S.C. Code Ann. § 35-1-1500 (1987) ("Every person who directly or indirectly controls a seller liable under § 35-1-1490, every partner, officer or direc-

The homeowners argue that this result is inconsistent with control person liability in actions brought by the Attorney General under section 39-5-110.[2] We disagree.

In section 39-5-20(b), the Legislature specifically instructs state courts to be guided by the decisions of the Federal Trade Commission (FTC) and the Federal Courts construing the Federal Trade Commission Act, 15 U.S.C. 45(a)(1), in interpreting section 39-5-20(a) which states:

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

In an FTC action, a director or officer of a corporation may be included in an order enjoining the corporation from deceptive trade practices, exposing him to personal liability for violations by the corporation's employees, if he is "in charge and control of the affairs of respondent corporation." *See Federal Trade Comm'n v. Standard Educ. Soc'y*, 302 U.S. 112, 119, 58 S.Ct. 113, 116, 82 L.Ed. 141 (1937). The federal act, however, does not create a private right of action to recover damages. Therefore, although the controlling person doctrine has been extended to actions brought by the Attorney General, we find no authority that the Legislature intended to extend the doctrine to private actions.

Moreover, the emphasis of the cases involving governmental action is to punish or enjoin responsible individuals, as well as the offending corporate entity, and to deter those individuals from simply setting up a new organization which utilizes the same scheme to defraud. *Smith v. Burdette Chrysler Dodge Corp.*, 774 F. Supp. 380 (D.S.C. 1991). The emphasis of cases involving a private action, however, is to grant the injured parties damages for violations of the UTPA. Therefore, the principles of control person liability are applied in fuller measure in a governmental action to further the public interest than when only private interests are involved. *See P.F.*

---

tor of such a seller, every person occupying a similar status or performing similar functions, . . . are also liable jointly and severally with and the same extent as the seller"). . . .

[2] *See State v. Brown*, 278 S.C. 281, 294 S.E. (2d) 781 (1982); *State v. Nest Egg Soc. Today, Inc.*, 290 S.C. 124, 348 S.E. (2d) 381 (Ct. App. 1986); *State v. Vip Enterprises, Inc.*, 286 S.C. 501, 335 S.E. (2d) 243 (Ct. App. 1985); *State v. C&L Corp.*, 280 S.C. 519, 313 S.E. (2d) 334 (Ct. App. 1984).

*Collier & Son Corp. v. F.T.C.*, 427 F. (2d) 261 (6th Cir. 1970), *cert. denied*, 400 U.S. 926, 91 S.Ct. 188, 27 L.Ed. (2d) 186 (1970).

For the foregoing reasons, the trial judge's rulings are

Affirmed.

CHANDLER and MOORE, JJ., concur.

TOAL and FINNEY, JJ., dissenting in separate opinion..

TOAL, Justice, dissenting:

I respectfully dissent.

## FACTS

Village Pond was developed by Innovative Developers, Inc. ("Innovative"). J. Allen Shumaker Builders, Inc. ("Shumaker"), Thomas Bagnal ("Bagnal"), and Duncan M. Lang ("Lang") each owned one-third of the corporation. Lang subsequently sold his shares to Shumaker and Bagnal.

In promoting Village Pond, Shumaker and Bagnal were key figures. The brochure which was given to prospective purchasers boasted of the "Creative Team at Village Pond." The "Creative Team" section of the brochure contained flattering dossiers of Bagnal, Shumaker, and Lang. J. Allen Shumaker was also interviewed by *The State* newspaper and an article was published on March 3, 1983. In the article, Shumaker was described as one of the "partners of Innovative Developers, Inc." The newspaper article and the brochure listed amenities in Village Pond which were never provided.

Lang was initially responsible for the marketing of Village Pond units. In 1986, however, Lang left Innovative and Shumaker assumed the marketing responsibilities. The Plaintiffs complained to Innovative that the promised amenities had not been built. Finally, in 1988, Bagnal met with the homeowners and promised that the amenities would be built. When the amenities did not materialize, the Plaintiffs brought suit.

At the end of the Plaintiffs' case, defendants Bagnal and Shumaker moved for summary judgment from personal liability. The Plaintiffs' attorney requested the trial judge rule that Bagnal and Shumaker were "controlling persons" of the corporation such that they would be personally liable under the

South Carolina Unfair Trade Practices Act. The trial judge ruled that the doctrine of "controlling person" did not apply in a private cause of action under the South Carolina Unfair Trade Practices Act. Based on this ruling, the trial judge limited the jury to considering only those acts where Bagnal and Shumaker dealt directly with the homeowners.

## LAW/ANALYSIS

S.C. Code Ann. § 39-5-20(a) (1985) declares unlawful in this state "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-140(a) (19850 creates a private right of action in any person who has suffered "ascertainable loss" because of the unfair trade practices of another "person." The Attorney General may also bring an action under S.C. Code Ann. § 39-5-50 and 110 (1985). Thus, the South Carolina Unfair Trade Practices Act creates a civil cause of action in both the injured party and the Attorney General. In contrast, under the Federal Unfair Trade Practices Act, there is no private cause of action. *See e.g. American Air Lines v. Christensen*, 967 F. (2d) 410 (10th Cir. 1992).

Notwithstanding the complete absence of a private cause of action under the Federal Unfair Trade Practices Act, the South Carolina General Assembly directed the courts to be guided by "interpretations given by the Federal Trade Commission and the Federal Courts" in defining activities which violate S.C. Code Ann. § 39-5-20(a) (1985). S.C. Code Ann. § 39-5-20(b) (1985).

Under S.C. Code Ann. § 39-5-10 (1985), "person" is defined as "natural persons, corporations, trusts, Partnerships, incorporated or unincorporated associations and any other legal entity." There is but one definitional section in the South Carolina Unfair Trade Practices Act.

The term "Controlling person," for the purposes of the South Carolina Unfair Trade Practices Act, first appeared in *State ex rel. McLeod v. Brown*, 278 S.C. 281, 294 S.E. (2d) 781 (1982). *In Brown*, this court held summary judgment inappropriate as there was an issue of fact as to whether the defendant was a "controlling person" of the corporation such that he would be subject to personal liability under the South Carolina Unfair Trade Practices Act. Since *Brown*, the Court of

Appeals has twice held a "controlling person" of the corporation may be liable under the South Carolina Unfair Trade Practices Act. *See State ex rel. Medlock v. Nest Egg Society Today, Inc.,* 290 S.C. 124, 348 S.E. (2d) 381 (Ct. App. 1986); *State ex rel. McLeod v. C. & L. Corp., Inc.,* 280 S.C. 519, 313 S.E. (2d) 334 (Ct. App. 1984).

While *Brown, Nest Egg* and *C&L Corporation* were all actions brought by the Attorney General, there remains only one definition of "person" under the South Carolina Unfair Trade Practices Act just as there is but one section declaring unlawful acts. Under the majority view expressed in the opinion, "person" as defined in S.C. Code Ann. § 39-5-10(a) (1985) means one thing for a private cause of action and another for a cause of action brought by the Attorney General. This is not in accord with South Carolina's statutory scheme. The legislature created a private cause of action in South Carolina as well as an action by the Attorney General. The clear directive is to provide a more expansive Unfair Trade Practices Act in South Carolina than the Federal Unfair Trade Practices Act. In my view, if the General Assembly intended for "person" to mean one thing for a private cause of action and another for an action by the Attorney General, it could have so provided.

Moreover, this is a case involving the purchase of homes by the plaintiffs. In recent years, this Court has greatly expanded the liability of developers and builders in the area of new residential housing. *See e.g. Kennedy v. Columbia Lumbar Manufacturing Company, Inc.,* 299 S.C. 335, 384 S.E. (2d) 730 (1989). In *C&L Corporation, Inc., supra,* the Court of Appeals held, under remarkably similar facts as the instant case, that the principals of the developer corporation were "controlling persons" and as such, they were subject to personal liability under the South Carolina Unfair Trade Practices Act. Specifically, the Court of Appeals held that "the broad definition of 'person' in the Act reaches controlling persons of a corporation." *Id.* 280 S.C. at 530, 313 S.E. (2d) at 341. I see no policy reason for holding "controlling persons" liable when suit is brought by the Attorney General under the South Carolina Unfair Trade Practices Act, and exonerating "controlling persons" of the corporations when the injured party brings the action.

The Legislature provided clear and unmistakable differ-

ences between a private cause of action and an action brought by the Attorney General under the South Carolina Unfair Trade Practices Act. *Compare e.g.* S.C.Code Ann. § 39-5-140(a)(1985) (establishing private cause of action and damages) and § 39-5-110 (1985) (establishing civil action in Attorney General and penalties). The definition of "person," however, is not among the differences.

In my view, whether Bagnal and Shumaker are personally liable for Innovative's UTPA violations is dependant on whether they "personally commit[ed], participate[d] in, direct[ed], or authorize[d] the commission of a violation of UTPA." *Ante* at 38.[1] The jury should have made that determination. I would hold the trial judge erred as a matter of law in removing from the jury's consideration the personal liability of Bagnal and Shumaker as "controlling persons." For the reasons stated herein, I would REVERSE and REMAND for a new trial.

FINNEY, J., concurs.

## ORDER

### Oct. 19, 1994

We granted appellants' petition for rehearing. After reconsideration, we adhere to the original majority opinion. *Plowman v. Bagnal,* Op. No. 24090, — S.E. (2d) — (S.C. Sup. Ct. filed June 13, 1994) (Davis Adv. Sh. No. 14 at 5).

(s) A. Lee Chandler C.J.
(s) James E. Moore A.J.
(s) John H. Waller Jr. A.J.

We adhere to the original dissent.

(s) Ernest A. Finney, Jr. A.J.
(s) Jean H. Toal A.J.

---

[1] The majority states "[i]n accordance with this settled principle, we *hold* that in private actions under the UTPA, directors and officers are not liable for the corporation's unfair trade practices *unless* they personally commit, participate in, direct or authorize the commission of a violation of the UTPA." [citations omitted] [emphasis added]. Notwithstanding this specific holding in the case at bar, the majority goes on to find two definitions of "person" under S.C. Code Ann. § 39-5-10(a) where I find but one.