543 So.2d 852 (1989)
SECURITY TITLE GUARANTEE CORPORATION OF BALTIMORE, Appellant,
v.
McDILL COLUMBUS CORPORATION, Appellee.
No. 88-01825.
District Court of Appeal of Florida, Second District.
May 17, 1989.
*853 James R. Betts of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for appellant.
Arthur S. Corrales and R. Jay Harpley, Tampa, for appellee.
FRANK, Acting Chief Judge.
The appellant, Security Title Guarantee Corporation, has appealed from a summary final judgment in which the court found that Security Title had breached its fiduciary duty to McDill Columbus Corporation and had tortiously interfered with a business relationship between McDill Columbus and McDill's judgment debtors, Oak Trace Corp. and C. Thomas Petersen. We reverse.
McDill loaned Oak Trace, a real estate developer, and C. Thomas Petersen, its president, $291,000 and in return received a mortgage on a parcel of property in Hillsborough County as security for the promissory note. Subsequently Security Title Guarantee Corporation issued a mortgagee title insurance commitment to McDill in the amount of $291,000, insuring that title to the property was vested in Oak Trace. No mortgagee title insurance policy was ever issued. Oak Trace and Petersen defaulted on the promissory note and McDill filed suit to recover the amounts due under the promissory note and to foreclose the mortgage.
During the pendency of its action, McDill learned that title to the property was not vested in Oak Trace, foreclosure was impossible, and it dismissed the foreclosure count. McDill did, however, obtain a judgment against Oak Trace and Petersen for the principal amount of $291,000.00, attorney's fees of $29,100.00, prejudgment interest and late charges of $24,288.23, and costs of $365.90, for a total of $344,753.72. McDill has claimed throughout that Security, as issuer of the title insurance commitment, is obligated to McDill for the entire amount of the judgment. Security, on the other hand, has consistently asserted that its liability is limited to the face amount of its commitment  $291,000. Although that dispute is not the immediate impetus for this lawsuit, it is at the foundation of this litigation.
After McDill obtained the judgment against Petersen and Oak Trace, Security paid McDill $291,000; in return McDill executed a partial assignment to Security of the $345,000 judgment (i.e., $291,000). Concurrently Security and McDill entered into an agreement in which McDill reserved a right to sue Security for any amount above $291,000 for which McDill believed Security was liable under the mortgagee title insurance commitment. McDill also agreed that the title insurance commitment *854 was cancelled and of no further force and effect.
A few months later Petersen contacted McDill's president, Maynard Fernandez, and purportedly agreed to pay McDill the balance of the final judgment in excess of $291,000  approximately $54,000. Fernandez then called his lawyer, Arthur Corrales, who in turn called Security Title before allowing McDill to accept the money. Corrales' intent, according to his deposition, was "to make sure it was okay with Security Title, if we received that money from Petersen, and if Security Title would be willing to execute some sort of legal document." McDill's position has been that Security's refusal to execute a satisfaction (or partial satisfaction) of judgment resulted in Petersen refusing to pay the $54,000; thus McDill instituted the present proceeding.
The original complaint against Security alleged breach of contract, breach of fiduciary duty, tortious interference with an advantageous business relationship, fraud, reformation, negligent retention of an agent, statutory theft, and racketeering. Upon Security's motion the court dismissed the counts for breach of contract, reformation, statutory theft, and racketeering, and McDill elected not to amend its dismissed counts. McDill thereafter moved for a summary judgment based upon Security's alleged tortious interference with an advantageous business relationship and breach of fiduciary duty, filing in support of its motion the affidavits of Fernandez and Petersen, and of its attorneys, Harpley and Corrales. McDill also filed the depositions of Fernandez, Harpley, and Corrales. On the morning of the summary judgment hearing Security filed and served the affidavit of Shapiro, a vice president of Security, but the court refused to consider it on the grounds of untimeliness pursuant to Rule 1.510(c), Florida Rules of Civil Procedure.
Although our review of the record discloses that genuine issues of material fact exist concerning the actual course of the negotiations following Petersen's offer to pay McDill the $54,000, thus precluding summary judgment, that conclusion is irrelevant because we are convinced that the claims for tortious interference and breach of fiduciary duty are meritless. The fiduciary duty question is easily settled. After Security paid McDill the $291,000 face amount of the title insurance commitment, the insurer-insured relationship was terminated by the settlement agreement. In pertinent part, the agreement provided:
In consideration of the sum of $291,000.00 paid to the Insured, the Insured hereby releases and forever discharges Insurer, its successors and assigns, from any and all claims, damages, costs, expenses, actions and cause [sic] of actions and any liability of any kind, nature or character arising out of or under Commitment No. 96611 and connecting in any way with the aforesaid failure of title to the property described in the McDill Mortgage, intended to be insured pursuant to Commitment No. 96611, subject to the provisions of Paragraph 1 above.
In paragraph 1 the insured, McDill, reserved the right to sue Security under certain conditions, for amounts in excess of the $291,000 which it had received. Thus, after the execution of the settlement agreement nothing remained of the Security-McDill relationship from which a fiduciary duty of any sort could arise. All that survived the settlement agreement was a potential for some kind of undefined future litigation. Thus, the claim for breach of fiduciary duty was substantively barren and should have been dismissed.
The facts as they appear in the complaint also fail to provide the needed framework for an actionable claim of tortious interference with an advantageous business relationship. Four elements are necessary to establish a tortious interference:
(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant, (3) an intentional and unjustified interference with the relationship by the defendant, and (4) damage to the plaintiff as a result of the breach of the relationship.
*855 Tamiami Trail Tours, Inc. v. Cotton, 463 So.2d 1126, 1127 (Fla. 1985). It is more than arguable that the status of McDill, as a judgment creditor, and Petersen/Oak Trace as judgment debtors, does not come within the concept of an "advantageous business relationship." Conceivably, however, such a relationship may have been created when Petersen called McDill and offered to pay $54,000  a part of its debt. The damaging blow to McDill's claim against Security, however, evolves from the complete lack of a factual basis for the allegation that Security either intentionally or without justification interfered with whatever transaction was contemplated by Petersen and McDill. The footing for this count is found solely within Security's refusal to execute a full or partial satisfaction of judgment when asked to do so by McDill. Security had no knowledge of the negotiations until contacted by McDill; it was an entirely passive party and manifested no tortious intent to invade McDill's interests. See Deane v. Johnston, 104 So.2d 3, 8 (Fla. 1958) ("Intent in the law of torts means that the actor acts for the purpose of causing an invasion of another's interest... ."). In addition to intent to damage the business relationship the plaintiff must show that the defendant acted without justification. This requires an examination of the defendant's "conduct, its motive, and the interests it sought to advance." Smith v. Emery Air Freight Corp., 512 So.2d 229, 230 (Fla. 3d DCA 1987). Security simply refused to execute a release for which it in return was to receive no consideration. Given the fact that it held a partial assignment of the judgment against McDill for $291,000, Security's conduct was justified. Security's understandable desire not to surrender its right to attempt recovery from Petersen/Oak Trace of the $291,000 it had paid McDill cannot be converted into a wrong for which it may be held responsible. The unchallengable controlling principle is that "so long as improper means are not employed, activities taken to safeguard or promote one's own financial ... interests are entirely non-actionable." Ethyl Corp. v. Balter, 386 So.2d 1220, 1225 (Fla. 3d DCA 1980), rev. denied, 392 So.2d 1371 (Fla. 1981), cert. denied, 452 U.S. 955, 101 S.Ct. 3099, 69 L.Ed.2d 965 (1981).
Accordingly, we reverse and vacate the summary judgment and remand this matter to the trial court with directions to dismiss counts II and III of the complaint, and for further proceedings consistent with this opinion.
THREADGILL and PATTERSON, JJ., concur.