Maurice **BESSINGER** and Piggie Park Enterprises, Inc., Plaintiffs,

v.

**FOOD LION, INC.** and Bobby Dalton, Defendants.

Maurice Bessinger and Piggie Park Enterprises, Inc., Plaintiffs,

v.

**Winn–Dixie, Inc.** and Mike Graybeal, Defendants.

Maurice Bessinger and Piggie Park Enterprises, Inc., Plaintiffs,

v.

**Sam's Club, Inc.,** Defendants.

Maurice Bessinger and Piggie Park Enterprises, Inc., Plaintiffs,

v.

**Wal–Mart Stores, Inc.,** Defendants.

C/A Nos. 3:03–2828–17, 8:03–2874–17, 4:03–2807–17, 8:03–2810–17.

United States District Court, D. South Carolina, Columbia Division.

Nov. 20, 2003.

Glen Winston La Force, Sr., Glen La Force Law Office, Hilton Head, SC, for plaintiffs.

Paul D. Harrill, Jonathan M. Milling, McNair Law Firm, Columbia, SC, Cheryl A. Falvey, Akin, Gump, Strauss, Hauer and Feld, McLean, VA, Donald A. Cockrill, Ogletree, Deakins, Nash, Smoak and Stewart, Greenville, SC, E. Raymond Moore,

III, Murphy and Grantland, Columbia, SC, for defendants.

## ORDER

JOSEPH F. ANDERSON, JR., District Judge.

These four cases come before the court on (1) the motion by the plaintiffs to remand two of the cases removed to this court, and (2) the motion by the defendants in all four cases to dismiss the plaintiffs' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. After reading the briefs and hearing from all of the parties at a proceeding conducted at the University of South Carolina School of Law on October 20, 2003, the court orally denied the plaintiffs' motions to remand and granted the defendants' motions to dismiss. The court now issues its written order setting forth the reasons for having so ruled.

## FACTS

The plaintiffs, Maurice Bessinger ("Bessinger") and his South Carolina Corporation, Piggie Park Enterprises, Inc. ("Piggie Park"), has been described by some as South Carolina's version of the Horatio Alger story. Bessinger built his now-famous barbecue business from the ground up, relying on hard work and a good product. The first of what would become a chain of eleven barbecue restaurants opened in Charleston, South Carolina in 1953. Eventually, a large packaging and bottling plant was built to process barbe-

cue sauce and meat for sale in stores. For many years, Bessinger sold his products to the defendants' stores: they, in turn, supplied South Carolinians and citizens of surrounding states with tasty mustard-based barbecue sauce. In September of the year 2000, the defendants discontinued selling the plaintiffs' products.

The plaintiffs allege the defendants discontinued the products in retaliation against Mr. Bessinger's exercise of his free speech rights. When the confederate flag was removed from the South Carolina state capitol in July 2000, Bessinger responded by flying the flag at each of his eleven barbecue restaurants.[1] In August 2000, an article in *The State* newspaper highlighted Bessinger's controversial political and religious views, focusing chiefly upon his support for the confederate flag. The article was followed by a series of print, radio, and television news stories also focusing on Bessinger's support of the confederate flag. In September 2000, the defendants Winn–Dixie, Inc. ("Winn–Dixie"), Food Lion, Inc. ("Food Lion"), Sam's Club, Inc. ("Sam's Club"), and Wal–Mart Stores, Inc. ("Wal–Mart") discontinued selling the plaintiffs' products.

The plaintiffs' sole cause of action against all defendants is a state law claim for violations of the South Carolina Unfair Trade Practices Act, S.C.Code Ann. § 39–5–10, *et seq.* ("SCUTPA") (Cumm.Supp.2002). The first such SCUTPA complaint filed by the plaintiffs then removed to this court was captioned *Mau-*

---

1. The confederate flag began flying over the South Carolina statehouse dome in the early 1960s. Confederate flag supporters contend that the flag was placed above the statehouse to help commemorate the centennial of the Civil War. Flag opponents suggest that it was put there for a different purpose—to symbolize South Carolina's resistance to pending civil rights legislation. Suffice it to say that the flag has been a source of continuing con-

troversy in South Carolina that has grown more intense over the years. In the decade of the 1990s, several groups organized economic boycotts of the State in an effort to have the flag lowered from the statehouse dome. Eventually, a compromise of sorts was agreed upon and the flag was removed from the statehouse dome and placed on a flag pole near the confederate soldier monument on the statehouse grounds.

*rice Bessinger and Piggie Park Enterprises, Inc. v. Harris Teeter, Inc. and Jeff Lewis*, C/A No. 0:03–02728–17. In that case, the plaintiffs filed their complaint in the Sixteenth Judicial Circuit of York County, South Carolina on August 1, 2003. On August 20, 2003, the defendants removed the case to federal court based on diversity jurisdiction, 28 U.S.C. § 1332.[2] The plaintiffs alleged in their complaint that the co-defendant, store manager Jeff Lewis ("Lewis"), was a citizen of South Carolina. However, attached to the notice of removal was an affidavit and a copy of Lewis's driver's license attesting to the fact that he was a citizen of North Carolina. On August 27, 2003, the plaintiffs filed a stipulation of voluntary dismissal and the case was closed. On August 28, 2003, the plaintiffs filed a new lawsuit against Harris Teeter in the Ninth Judicial Circuit of Charleston County, South Carolina. This time, the plaintiffs joined store manager and South Carolina resident Randy Rasmussen as a co-defendant. The action was removed to this court on October 3, 2003, but it is not before the court at this time. *Maurice Bessinger and Piggie Park Enterprises, Inc. v. Harris Teeter, Inc. and Randy Rasmussen*, C/A No. 2:03–3152–17.[3]

The four cases now before the court include: *Maurice Bessinger and Piggie Park Enterprises, Inc. v. Food Lion, Inc. and store manager Bobby Dalton*, C/A No. 3:03–2828–17; *Maurice Bessinger and Piggie Park Enterprises, Inc. v. Winn–Dixie, Inc. and store manager Mike Graybeal*, C/A No. 8:03–2874–17; *Maurice Bessinger and Piggie Park Enterprises, Inc. v. Sam's Club, Inc.*, C/A No. 4:03–2807–17;[4] *Maurice Bessinger and Piggie Park Enterprises, Inc. v. Wal–Mart Stores, Inc.*, C/A No. 8:03–2810–17.[5] The plaintiffs originally filed the lawsuits in state court, and the defendants removed them to federal court.[6]

The court will first resolve the jurisdictional questions of remand and fraudulent joinder before addressing the motions for dismissal.

## DISCUSSION

### I. Motions to Remand for Lack of Subject Matter Jurisdiction

#### A. Removal and Fraudulent Joinder

Removal is technically effective upon the defendants' filing of their notice of removal, 28 U.S.C. § 1446. However, when a state law claim is before the federal court solely on the basis of diversity pursuant to 28 U.S.C. § 1332, the defendants' ability to

2. The plaintiffs are citizens of the State of South Carolina. The defendant, Harris Teeter, Inc. ("Harris Teeter") is a citizen of the State of North Carolina.

3. This case is not before the court at this time because the time for briefing the issues raised by the parties has not yet expired.

4. The plaintiffs originally also named Sam's Club store manager, Charlie Gurisco, as a co-defendant. However, with the plaintiffs' consent, Gurisco was dismissed from the action on October 2, 2003. Once the claims against Gurisco were dismissed, no in-state defendant remained to defeat diversity jurisdiction in this cause of action.

5. The plaintiffs originally also named Wal–Mart store manager, Larry Lollis, as a co-defendant. Also, with the plaintiffs's consent, Lollis was dismissed from the action on October 2, 2003. Once the claims against Lollis were dismissed, no in-state defendant remained to defeat diversity jurisdiction in this cause of action.

6. All the defendants based removal upon diversity jurisdiction, 28 U.S.C. § 1332. Food Lion argues that this court also has federal question jurisdiction under 28 U.S.C. § 1331 to hear the claims against it.

keep that cause of action in the federal forum is restricted. The "complete diversity" rule limits diversity jurisdiction to only those cases where no shared citizenship exists between the adverse parties. *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). If a party not diverse to the plaintiff has been joined as a defendant prior to the removal, the complete diversity rule is not satisfied and the district court is typically deprived of subject matter jurisdiction to hear the case. *Mayes v. Rapoport,* 198 F.3d 457, 461 (4th Cir.1999). Without subject matter jurisdiction, the district court must remand the case to state court. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

■ The judicially-created "fraudulent joinder doctrine" is an exception to the complete diversity rule that "effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants at the time the case is removed." *Id.* at 461. In the Fourth Circuit, the removing party has a heavy burden of showing fraudulent joinder. All issues of law and fact must be resolved in the plaintiff's favor and the plaintiff will prevail even where "only the possibility of a right to relief" is asserted. *Marshall v. Manville Sales Corp.,* 6 F.3d 229, 232–33 (4th Cir.1993). To be successful, the removing party must show "either that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleading of

jurisdictional facts." *Id.* at 232 (quoting *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir.1981) (emphasis in original)). Once the defendants raise a colorable claim of fraudulent joinder, the court may look beyond the pleadings to determine whether the nondiverse party has indeed been fraudulently joined. *Auto Ins. Agency, Inc. v. Interstate Agency, Inc.,* 525 F.Supp. 1104, 1106 (D.S.C.1981).

### B. SCUTPA Claims Against Nondiverse Store Managers

■ Food Lion and Winn–Dixie contend the plaintiffs fraudulently joined nondiverse store managers Bobby Dalton and Mike Graybeal in their respective causes of action for the sole purpose of defeating federal subject matter jurisdiction. No defendant claims the plaintiffs committed outright fraud in pleading jurisdictional facts. Consequently, to prevail, Food Lion and Winn–Dixie must show that, under South Carolina law, the plaintiffs have no possibility of recovery against the store managers for alleged SCUTPA violations.[7]

Section 39–5–20(a) sets forth conduct that gives rise to liability under the SCUTPA:

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

S.C.Code Ann. § 39–5–20(a) (Cumm.Supp.2002). Section 39–5–140 of the SCUTPA provides a private right of action for actual damages arising from violations of Section 39–5–20:

Any person[8] who suffers any ascertainable loss of money or property, real or

---

7. "When hearing a case pursuant to diversity jurisdiction, a federal court must determine issues of state law as it believes the highest court in the state would determine them." *Bettius & Sanderson, P.C. v. Nat'l Union Fire*

*Ins.,* 839 F.2d 1009, 1019 (4th Cir.1988) (quoting Wright, Miller & Cooper, FED. PRACTICE & PROCEDURE § 4509 (1982)).

8. Person under the SCUTPA includes "natural persons, corporations, trusts, partner-

personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39–5–20 may bring an action individually, but not in a representative capacity, to recover actual damages....

S.C.Code Ann. § 39–5–140(a) (Cumm.Supp.2002).

To maintain a private cause of action under SCUTPA, a plaintiff must establish: (1) the defendant engaged in an unlawful trade practice; (2) the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice; and (3) the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest. *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 291 (4th Cir.1998) (citing S.C.Code Ann. § 39–5–140; *Daisy Outdoor Advertising Co. v. Abbott*, 322 S.C. 489, 473 S.E.2d 47, 49 (1996)).

 The South Carolina Supreme Court has declared "[t]he plain language of section 39–5–140 provides that any person is liable for damages resulting from their *use or employment of* unfair trade practices." *Plowman v. Bagnal*, 316 S.C. 283, 450 S.E.2d 36, 37 (1994) (emphasis in original). While no South Carolina case squarely addresses whether a grocery store manager may be held liable for the unfair trade practices of his or her employing corporation, the South Carolina Supreme Court has ruled on the liability of "control persons" under the SCUTPA. The court in *Plowman v. Bagnal* rejected derivative liability for control persons "for all corporate violations of section 39–5–140 without regard to whether that person 'used or employed' an unfair trade practice." *Id.* The court reasoned: "It is well-settled that cor-

porate officers and directors are not liable for the tortious conduct of the corporation unless they commit, participate in, direct, or authorize the commission of a tort." *Id.* (citation omitted). The court thus held "in private actions under the UTPA, directors and officers are not liable for the corporation's unfair trade practices unless they personally commit, participate in, direct, or authorize the commission of a violation of the UTPA." *Id.*, 450 S.E.2d at 38.

In the cases before the court, the plaintiffs allege that the defendants' decisions to stop selling the plaintiffs' products in retaliation against Mr. Bessinger's controversial speech constituted an unfair trade practice. The plaintiffs further allege that the store managers "participated in" that unfair trade practice by physically removing Bessinger's products from their stores' shelves. The defendants argue that the store managers in no way participated in, directed or authorized the act alleged to be the unfair trade practice—*i.e.*, the *corporate decision* to discontinue selling the plaintiffs' products. The defendants contend, correctly, that if SCUTPA liability were imposed on store managers for merely following corporate orders, then liability could also be imposed on the stock boy who carried out the store manager's order. To be personally liable for the SCUTPA violations of the corporation, however, the store managers must have committed, participated in, directed or authorized the *commission of the violation*.

After hearing from all of the parties, the court finds that the alleged violation, or unfair trade practice, was the *corporate decision* to discontinue selling the plaintiffs' products not the *physical removal* of the products from store shelves. In that

ships, incorporated or unincorporated association and any other legal entity." S.C.CODE

ANN. § 39–5–10(a) (Cumm.Supp.2002).

regard, even if the corporate defendants committed a SCUTPA violation, the plaintiffs still have no possibility of a right to relief against the store managers. The managers did not commit, participate in, direct or authorize the *corporate decision* to discontinue the plaintiffs' products.

In further support of their fraudulent joinder argument, the defendants note that the plaintiffs failed to join as co-defendants the control persons who actually made the corporate decision to discontinue the products. These control persons, unlike the store managers, may be held personally liable for the unfair trade practices of their corporation under South Carolina law. The defendants argue that the plaintiffs' failure to join control persons indicates that the store managers were joined solely for the purpose of defeating diversity jurisdiction. Joining out-of-state control persons would not destroy diversity: joining in-state store managers would.

Other circumstantial evidence supports the defendants' claims that the store managers were fraudulently joined. The first lawsuit removed to this court was voluntarily dismissed once it was determined that the local store manager joined as a co-defendant was in fact diverse to the plaintiffs, thereby conferring diversity jurisdiction upon this court. Approximately one day after voluntarily dismissing that case, the plaintiffs filed another lawsuit in state court against the same corporate defendant. This time, however, the plaintiffs named a different store manager as co-defendant—a citizen of South Carolina. Additionally, the plaintiffs voluntarily dismissed the store managers joined as co-defendants in their causes of action against Sam's Club and Wal–Mart. The circumstances of these dismissals indicated that

no in-state co-defendant could be located to defeat diversity jurisdiction. Finally, the plaintiffs' decision to join nondiverse store managers (who have no decision-making power) coupled with their decision not to join diverse control persons (who made the decision complained of) indicates that defeating this court's jurisdiction was the sole reason for joining the in-state store managers.

For all of these reasons, the court finds the defendants have met their heavy burden of establishing fraudulent joinder. Under South Carolina law, the plaintiffs have not even the slightest possibility of recovery against the co-defendant store managers for SCUTPA violations; thus, the claims against Bobby Dalton and Mike Graybeal are dismissed. Having dismissed these claims, the complete diversity requirement is satisfied with respect to the plaintiffs' causes of action against Food Lion and Winn–Dixie. The court therefore denies the plaintiffs' motions to remand these cases to state court. Finding federal subject matter jurisdiction proper in all four pending cases, the court will next address the defendants' motions to dismiss.[9]

## II. Motions to Dismiss for Failure to State a Claim under Rule 12(b)(6)

### A. *Standard of Review*

■ A motion to dismiss should be granted only when it appears that the plaintiff can prove no set of facts in support of a claim that would entitle the plaintiff to relief on that claim. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss, the court must view the complaint in the light most favorable to the

9. Because the court finds it has subject matter jurisdiction on the basis of diversity, it does not reach the question of whether it also has federal question jurisdiction as asserted by Food Lion.

plaintiff and resolve every doubt in the plaintiff's favor. The plaintiff's allegations are to be taken as true for the purpose of ruling upon the motion. *Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). In addition, any inference reasonably drawn from the complaint must be considered together with the plaintiff's allegations of fact. *Murray v. City of Milford,* 380 F.2d 468, 470 (2d Cir.1967). However, the court may not consider conclusions of law or unwarranted deductions of fact. *Mylan Laboratories, Inc. v. Akzo, N.V.,* 770 F.Supp. 1053, 1059 (D.Md.1991). It is also well-settled that a complaint cannot be amended by the plaintiff's briefs in opposition to a motion to dismiss. *Id.* at 1068.

### B. Failure to State a Claim Under the SCUTPA

A claim for money damages under the SCUTPA is an action at law. *Payne v. Holiday Towers, Inc.,* 283 S.C. 210, 321 S.E.2d 179, 182 (App.1984). And, for purposes of this motion, the facts pled by the plaintiff must be taken as true. Consequently, the court must base its ruling upon the presumption that the defendants discontinued selling the plaintiffs' products in retaliation against Mr. Bessinger's publicly expressed views regarding the confederate flag.

To defeat the defendants' motions to dismiss, the plaintiffs must establish that the act complained of constituted an unfair trade practice as contemplated by the SCUTPA. Moreover, the plaintiff must establish that the unfair or deceptive practice or act adversely impacts the public

interest. *Jefferies v. Phillips,* 316 S.C. 523, 451 S.E.2d 21, 23 (App.1994) (citations omitted). Under South Carolina law, unfair or deceptive acts have an adverse impact upon the if those acts have the potential for repetition. *Haley Nursery Co. v. Forrest,* 298 S.C. 520, 381 S.E.2d 906, 908 (1989); *Global Protection Corp. v. Halbersberg,* 332 S.C. 149, 503 S.E.2d 483, 487 (App.1998) (citing *York v. Conway Ford, Inc.,* 325 S.C. 170, 480 S.E.2d 726, 728 (1997)). However, conduct that affects only the parties to the transaction and not the public interest provides no basis for a SCUTPA claim. *Jefferies,* 451 S.E.2d at 23. Because only unfair acts that adversely affect the public interest give rise to liability under the SCUTPA, a deliberate or intentional breach of contract, without more, does not constitute a violation of the SCUTPA. *Wilson Group, Inc. v. Quorum Health Res., Inc.,* 880 F.Supp. 416, 426 (D.S.C.1995) (citing *Ardis v. Cox,* 314 S.C. 512, 431 S.E.2d 267, 271 (App.1993)); *see also S.C. Nat'l Bank v. Silks,* 295 S.C. 107, 367 S.E.2d 421, 423 (App.1988) (reiterating that mere breach of contract does not give rise to SCUTPA liability).

### 1. Unfair or Deceptive Act or Practice

■ This court has already determined that the act complained of is the corporate decision to discontinue selling the plaintiffs' products. Therefore, to state a claim under the SCUTPA, the plaintiffs must show that corporate decision constitutes either an unfair or deceptive act or practice. *See* S.C.Code Ann. § 39–5–140(a) (Cumm.Supp.2002).[10] The plaintiffs do not allege any "deceptive practice" on the part of the defendants. Thus, the plaintiffs

---

**10.** Section 39–5–140(a) of the SCUTPA provides:

Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of an unfair or deceptive method, act or practice

declared unlawful by § 39–5–20 may bring an action individually, but not in a representative capacity, to recover actual damages....

S.C.Code Ann. § 39–5–140 (Cumm.Supp.2002).

must demonstrate the decision to discontinue selling the products in retaliation against Mr. Bessinger's speech was an "unfair act."

The SCUTPA does not expressly define "unfair act." The General Assembly of South Carolina, however, has expressly stated:

> It is the intent of the legislature that in construing paragraph (a) of this section the court will be *guided* by the interpretations given by the Federal Trade Commission and the Federal Courts to § 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)) ["FTCA"], as from time to time amended.

S.C.Code Ann. § 39–5–20(b) (Cumm.Supp.2002) (emphasis added). The federal courts' construction of section 5(a)(1) of the FTCA may guide, therefore, this court's determination of the meaning of "unfair act" under the SCUTPA. *Bostick Oil Co. v. Michelin Tire Corp. Comm'l Div.*, 702 F.2d 1207, 1220 (4th Cir.1983).

When construing section 5(a)(1) of the FTCA, most federal courts have applied the definition of "unfair" set forth in *Spiegel, Inc. v. F.T.C.*, 540 F.2d 287 (7th Cir. 1976). A practice is unfair within the meaning of the Federal Trade Commission Act when it "offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id.* at 293.[11]

Applying the Seventh Circuit's definition of "unfair" to the cases at hand, if termination of a business relationship on the facts alleged here offends established public policy and constitutes an "immoral, unethical, oppressive, unscrupulous" act, the SCUTPA would have substantially contravened long-established basic contract principles. It is still good law in South Carolina that:

> The fundamental conception of a contract is that it is an agreement, and that implies mutual consent. Therefore, the law allows one to determine for himself with whom he will contract; hence one may refuse to contract with another or to buy or sell his goods without incurring liability for the resulting damage, even though his refusal be prompted by the intent to injure the other. . . . All authorities agree the right to refuse to enter into business relations with another is an absolute right.

*McMaster v. Ford Motor Co.*, 122 S.C. 244, 115 S.E. 244, 246–47 (1921) (internal citation omitted). If the plaintiffs can force the defendants to continue in a business relationship, removing from them the freedom to terminate it, then the mutuality that has long defined business agreements has vanished. The SCUTPA was enacted to protect the public: "The [A]ct is not available to redress a private wrong where the public interest is unaffected." *Columbia E. Assoc. v. Bi–Lo, Inc.*, 299 S.C. 515, 386 S.E.2d 259, 263 (App.1989) (re-stating a deliberate or intentional breach of a valid contract, without more, does not constitute a violation of the SCUTPA).[12]

---

**11.** *See, e.g., Am. Fin. Serv. Ass'n v. FTC*, 767 F.2d 957, 983 (D.C.Cir.1985); *Betts v. Advance Am.*, 213 F.R.D. 466, 482 (M.D.Fla. 2003); *Rogers v. Cisco Sys., Inc.*, 268 F.Supp.2d 1305, 1317 n. 21 (N.D.Fla.2003); *Samuels v. Old Kent Bank,* 1997 WL 458434 (N.D.Ill.1997), at *9; *Moore v. Lomas Mtg. USA*, 796 F.Supp. 300, 306 (N.D.Ill.1992); *Mirafi, Inc. v. Murphy*, 928 F.2d 410 (Table) (W.D.N.C. Feb. 4, 1991); *Gen'l United Co. v.*

*Am. Honda Motor Co.*, 618 F.Supp. 1452, 1455 (W.D.N.C.1985); *Robert's Waikiki U-Drive, Inc. v. Budget Rent-A-Car Sys., Inc.*, 491 F.Supp. 1199 (D.Haw.1980) (applying or referencing the definition of "unfair" found in *Spiegel* ).

**12.** "The legislature's intent [was] to limit the application of the UTPA to only those unfair or deceptive acts or practices in the conduct

The plaintiffs correctly state that Mr. Bessinger's speech, however controversial, is protected under the First Amendment to the United States Constitution. U.S. CONST. amend. I. The very purpose of the First Amendment is to protect speech that is unpopular or controversial. *Cf., Nat'l Soc. White People's Party v. Ringers,* 473 F.2d 1010, 1015 (4th Cir.1973) ("There is no dispute that the First Amendment protects from *state* interference the expression in a public place of the unpopular as well as the popular ....") (emphasis added). While Mr. Bessinger has exercised his right to express his views, the defendants have likewise exercised their freedom not to sell his products. *See Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (broadly stating liberty "denotes not merely freedom from bodily restraint but also the right of the individual to contract ..."); *cf., Integrated Consulting Serv., Inc. v. LDDS,* 176 F.3d 475 (Table), 1999 WL 218740, at *9 (4th Cir. Apr.15, 1999) ("freedom *not* to contract should be as protected as freedom to contract") (emphasis in original).

When viewing all of the law and all of the facts in the light most favorable to the plaintiffs, the court cannot find that the defendants' decisions to discontinue selling the plaintiffs' products either offends established public policy or was "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." If it were, every breach of contract action would give rise to SCUTPA liability. Yet, South Carolina law is clear: even an intentional breach of contract, absent an ad-

verse public impact, will not support a cause of action under the SCUTPA. *Columbia E. Assoc.,* 386 S.E.2d at 263.

The Fourth Circuit has indicated, *in dicta,* that wrongful termination of a distributorship may sustain a SCUTPA claim. *Chuck's Feed & Seed Co. v. Ralston Purina Co.,* 810 F.2d 1289, 1292 (4th Cir.1987) (citing *Bostick Oil Co. v. Michelin Tire Corp.,* 702 F.2d 1207, 1220 (4th Cir.1983) ("This court has suggested, in *dicta,* that the UTPA may also extend to conduct which would give rise to a cause of action for wrongful termination under South Carolina common law.")). However, the Fourth Circuit has also found that termination of a distributorship was not actionable under the SCUTPA where the termination was a business decision, was not wrongful, and had no adverse impact on the public. *Richland Wholesale Liquors v. Glenmore Distilleries Co.,* 818 F.2d 312, 317 (4th Cir.1987). In the time since the Fourth Circuit cases indicating that wrongful termination *may* give rise to SCUTPA liability, the South Carolina courts have expressly held that: "a deliberate or intentional breach of contract, without more, does not constitute a violation of the Unfair Trade Practices Act." *Columbia E. Assoc. v. Bi–Lo, Inc.,* 299 S.C. 515, 386 S.E.2d 259, 263 (S.C.Ct.App. 1989) (citing *Key Co. v. Fameco Distributors, Inc.,* 292 S.C. 524, 357 S.E.2d 476, 478 (App.1987)); and conduct that affects only parties to the transaction provides no basis for a SCUTPA claim, *Jefferies v. Phillips,* 316 S.C. 523, 451 S.E.2d 21, 23 (App.1994).

of trade or commerce that affect the public interest...." *Noack Enterprises, Inc. v. Country Corner Interiors of Hilton Head Island, Inc.,* 290 S.C. 475, 351 S.E.2d 347, 349 (App. 1986). The language of the statute "reflects the legislature's intent that an unfair or deceptive act or practice in the conduct of any trade or commerce injuriously affect 'the peo-

ple of this State,' *i.e.,* the public interests, before it can be actionable under the UTPA." *Id.* Consequently, while an injured private party may not have a cause of action under the SCUTPA, he is not without recourse. Contract and tort causes of action provide the primary mechanisms for redressing grievances between private parties.

Yet, giving the plaintiffs every benefit of the law, assuming *arguendo* that discontinuing the plaintiffs' products in retaliation for his unpopular speech was an "unfair act" within the meaning of the SCUTPA, the plaintiffs must also demonstrate that this unfair act adversely impacted the public interest. *Florence Paper Co. v. Orphan,* 298 S.C. 210, 379 S.E.2d 289, 291 (1989); *LaMotte v. Punch Line of Columbia, Inc.,* 296 S.C. 66, 370 S.E.2d 711, 713 (1988); *Noack Enterprises, Inc. v. Country Corner Interiors of Hilton Head Island, Inc.,* 290 S.C. 475, 351 S.E.2d 347, 349–50 (App.1986).

### 2. Adverse Public Impact

To sustain a cause of action under the SCUTPA, the plaintiffs must establish, by specific facts, that members of the public were adversely affected by the defendants' retaliation against Mr. Bessinger's speech. *See Jefferies v. Phillips,* 316 S.C. 523, 451 S.E.2d 21, 23 (App.1994) (quoting *Daisy Outdoor Advertising Co. v. Abbott,* 317 S.C. 14, 451 S.E.2d 394, 397 (App.1994), "[w]ithout proof of specific facts disclosing that members of the public were adversely affected by the unfair conduct or that they were likely to be, all we are left with is a 'speculative claim of adverse public impact' and that will not suffice under the UTPA."). "An unfair or deceptive trade practice has an impact upon the public interest if it has the potential for repetition." *York v. Conway Ford,* 325 S.C. 170, 480 S.E.2d 726, 728 (1997); *Haley Nursery Co. v. Forrest,* 298 S.C. 520, 381 S.E.2d 906, 908 (1989); *Global Protection Corp. v. Halbersberg,* 332 S.C. 149, 503 S.E.2d 483, 487 (App.1998). However, a deliberate or intentional breach of contract, without more, will not sustain a claim under the SCUTPA. *Ardis v. Cox.,* 314 S.C. 512, 431 S.E.2d 267, 271 (App.1993). "An unfair or deceptive act or practice that affects only the parties to a trade or a commercial transaction is beyond the [A]ct's embrace...." *Noack Enterprises, Inc. v. Country Corner Interiors of Hilton Head Island, Inc.,* 290 S.C. 475, 351 S.E.2d 347, 349–50 (App.1986). "Otherwise every intentional breach of contract within a commercial setting would constitute an unfair trade practice and thereby subject the breaching party to treble damages." *Ardis,* 431 S.E.2d at 271.

The plaintiffs allege the defendants' retaliation against Mr. Bessinger's speech impacts the public interest because it has the potential for repetition. The potential for repetition here, the plaintiffs argue, is that the defendants may similarly retaliate against other vendors who express controversial views. While that may be true, the court is hard pressed to find how members of the public are adversely impacted in that respect. The defendants sell the vendor's products to make money. If the defendants retaliate against vendors by refusing to sell their products, they risk disenfranchising some customers even while attempting to preserve their relationship with others. The market, therefore, typically drives the business decision about which products to carry and which products not to carry. Customers can express their disapproval of a store's decision not to sell a product by shopping elsewhere.

In other words, the vendor is free to express his views; the store is free not to do business with the vendor based on those views; and the customer is free not to patronize the store because it no longer sells the vendor's product. Such free market interaction benefits rather than harms the public interest. How can this court force the grocery store to sell the vendor's product when it cannot, and will not, force the customers to patronize the store? The business decision should, and does, rest squarely with the one who bears the risk of the decision. *See Smithy Braedon Co.*

*v. Hadid,* 825 F.2d 787, 790 (4th Cir.1987) (quoting Justice Holmes regarding freedom of contract: "I think that at least it is safe to say that the most enlightened judicial policy is to let people manage their own business in their own way, unless the ground for interference is very clear."); *Richland Wholesale Liquors v. Glenmore Distilleries, Co.,* 818 F.2d 312, 317 (4th Cir.1987) (noting that "it is not for the courts or juries to second-guess" certain business decisions); *cf., Glaesner v. Beck/Arnley Corp.,* 790 F.2d 384, 390 (4th Cir.1986) (noting that "South Carolina law has never equated the exercise of reasonable business judgment with an act of tortious bad faith.").[13]

The court finds, in the cases before it, the only harm suffered from the alleged unfair act was purely private. Having failed to demonstrate that the act complained of adversely impacted the public interest, no remedy is available under the SCUTPA to redress the plaintiffs' grievances.

## CONCLUSION

For the reasons stated above, the court has resolved the jurisdictional questions of remand and fraudulent joinder in the Food Lion and Winn–Dixie cases as follows: (1) the court finds the in-state store managers Bobby Dalton and Mike Graybeal were fraudulently joined and, thus, dismisses the plaintiffs' claims against them; (2) having dismissed the plaintiffs' claims against the in-state co-defendants, the court finds the complete diversity requirement of 28 U.S.C. § 1332 satisfied; and (3) because the court has federal subject matter jurisdiction to hear these cases, the court denies the plaintiffs' motions to remand the Food Lion and Winn–Dixie causes of action to state court.

With respect to the defendants' motions to dismiss pursuant to Fed. R. Civ. P 12(b)(6), the plaintiffs cannot sustain their SCUTPA claims against the defendants. The plaintiffs have failed to establish that the corporate decision by the defendants to discontinue selling the plaintiffs' products constitutes an unfair act that adversely impacts the public interest. The defendants' motions to dismiss the plaintiffs' unfair trade practices claims are hereby granted.

IT IS SO ORDERED.

---

**13.** In *Glaesner,* the plaintiff sued for wrongful termination of a written distributorship agreement in violation of South Carolina tort law and the SCUTPA. Because the Fourth Circuit found that the termination was not wrongful, the court did not address whether wrongful termination alone would give rise to liability under SCUTPA. The court did, however, explain: "Ordinarily, violations of SCUTPA are either antitrust or consumer actions. Here we note no antitrust allegations, no allegations of anticompetitive conduct, and no allegations of consumer injury." *Glaesner v.Beck/Arnley Corp.,* 790 F.2d 384, 390 (4th Cir.1986) (internal citations omitted). Similarly, in the cases before this court, the plaintiffs make no antitrust allegations, no allegations of anticompetitive conduct, and no allegations of *consumer* injury.