DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

SARASOTA TENNIS CLUB HOLDINGS, LLC,

Appellant,

v.

COUNTRY CLUB OF SARASOTA HOMEOWNERS
ASSOCIATION, INC.,
and MARY LOUISE GERRITSEN,

Appellees.

No. 2D22-2358

_____

February 2, 2024


BY ORDER OF THE COURT:

Appellees' limited motion for clarification is granted. The prior opinion dated December 15, 2023, is withdrawn, and the attached opinion is issued in its place. No further motions for rehearing will be entertained.

I HEREBY CERTIFY THE FOREGOING IS A TRUE COPY OF THE ORIGINAL COURT ORDER.


MARY ELIZABETH KUENZEL
CLERK

DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

————————————————

SARASOTA TENNIS CLUB HOLDINGS, LLC,

Appellant,

v.

COUNTRY CLUB OF SARASOTA HOMEOWNERS
ASSOCIATION, INC.,
and MARY LOUISE GERRITSEN,

Appellees.

No. 2D22-2358

————————————————

February 2, 2024

Appeal from the Circuit Court for Sarasota County; Andrea McHugh,
Judge.

Elliot B. Kula and W. Aaron Daniel of Kula and Associates, P.A., Miami,
for Appellant.

Elaine D. Walter and Yvette R. Lavelle of Boyd, Richards, Parker,
Colonnelli, P.L., Miami, for Appellees.

LUCAS, Judge.

Sarasota Tennis Club Holdings, LLC (the Tennis Club), appeals a
final summary judgment entered on its complaint against Country Club
of Sarasota Homeowners Association, Inc. (the HOA), and Mary Louise
Gerritsen. We affirm in part and reverse in part.

The Tennis Club owns a parcel within the Country Club of Sarasota residential community on which it operates a for-profit tennis club. Pursuant to a 1992 maintenance agreement between the Tennis Club's predecessor and the HOA, the Tennis Club agreed to limit its activities on its property to those normally associated with a tennis club. The maintenance agreement also granted the HOA a right of first refusal to purchase the Tennis Club's property, which reads: "The Homeowners Association has the right of first refusal to permit the Homeowners Association to purchase the Tennis Club property at some point in the future should the Tennis Club elect to sell or file for bankruptcy."

In addition to the maintenance agreement, in 1992, the Tennis Club's predecessor and the HOA entered into a drainage agreement, which, in pertinent part, provides: "[The HOA] acknowledges that BAY VENTURE [the Tennis Club's predecessor], its successor or assigns may petition Sarasota County to rezone the tennis and clubhouse facilities area. . . . [The HOA] hereby agrees that it shall not challenge a petition for such rezoning on any drainage-related issue."

In 2016, the HOA filed a civil action against the Tennis Club, alleging that the Tennis Club had breached these two agreements. The HOA sought both injunctive and monetary relief. While that litigation was pending, the Tennis Club sought to sell its property.

On August 28, 2017, the Tennis Club and a developer, Taylor Morrison Homes, entered into a purchase and sale agreement for the Tennis Club's property for $3,500,000. The HOA waived its right of first refusal through a letter its counsel sent to the Tennis Club on October 13, 2017. However, according to the Tennis Club, Ms. Gerritsen and five other board members began "secretly" discussing how the HOA might nevertheless be able to purchase the Tennis Club's property. There is

2

record evidence that these individuals conducted closed board meetings on this issue and directed the HOA's property manager not to approve any minutes concerning any of these closed meetings, who instead notated "that the minutes were not completed at this time."

On November 6, 2017, the HOA sent a letter to the Tennis Club and Taylor Morrison claiming that an extension on the closing that had been extended to Taylor Morrison (apparently, due to Hurricane Irma) constituted a "material term" which "restarted" the HOA's right of first refusal. The November 6 letter accused Taylor Morrison of keeping "the Association in the dark" about this extension and admonished "Taylor Morrison and their representatives [to] conduct themselves in a straightforward manner." The final paragraph of the November 6 letter stated that the HOA was "reviewing whether the Association would be willing to waive the deed restriction contained in paragraph 5 of the 1992 [maintenance] agreement allowing for a different use than that which is contained therein."

There is, however, no such deed restriction.[1] Ten days later, Taylor Morrison withdrew from its agreement with the Tennis Club. When asked in deposition why Taylor Morrison refused to close, its representative testified that, among other issues, there were "outstanding issues between the seller [the Tennis Club] and the association." The representative was pointedly asked whether, if it weren't for the "issue" between the Tennis Club and the HOA, would Taylor Morrison have closed on its contract with the Tennis Club. Notably, the representative did not respond "no," but rather: "That's difficult to say . . . ."

---

[1] Indeed, Ms. Gerritsen later sent an email to the HOA's board that stated: "[O]ne thing is certain – they [the Tennis Club] have the right to develop the 11.34 acres into a residential unit [sic] . . . ."

3

In February 2018, the Tennis Club negotiated a second purchase and sale agreement, this time in the amount of $2.3 million for a portion of its property, with Robert Mitchell. The agreement with Mr. Mitchell included a put option to convey the remaining Tennis Club property (about 5.4 acres) for $1.2 million.

Shortly after the Tennis Club notified the HOA of this new agreement, the HOA convened a special meeting. In communicating with the residents of the Country Club of Sarasota, the HOA misstated the scope of development being proposed and that the HOA's right of first refusal encompassed the entire Tennis Club Property (when, in fact, that was not how the purchase and sale agreement between the Tennis Club and Mr. Mitchell was structured). The Tennis Club's president testified in deposition that Mr. Mitchell became "very nervous" that he was "buying a lawsuit" with the HOA if he were to close. Ultimately, Mr. Mitchell elected not to close on his contract with the Tennis Club. His attorney sent correspondence to the Tennis Club, which stated: "In reviewing the letter of [HOA's counsel], it is abundantly clear that litigation would be instituted if the HOA were not presented with these changes and provided their first refusal rights." Shortly afterwards, the HOA approached the Tennis Club about purchasing the Tennis Club's property at a lower price than what the Tennis Club had negotiated with Mr. Mitchell.

In 2019 the Tennis Club filed a rezoning petition with Sarasota County to pursue residential development on its property. Upon learning of the petition, one of the HOA board members, Claudia Hurley, wrote an email to Heritage Group, the property owner abutting the Tennis Club's property. The email was copied to the HOA's property manager, board

president, and board member Ms. Gerritsen. In this email, Ms. Hurley stated:

> We feel that the proposed rezone petition could have a negative effect on [the golf course property] in ways we enumerated yesterday.
>
> We have discussed the stormwater issues that could have an impact on the golf course (should excess runoff drain onto the course), or should it be necessary for the applicant to enlarge or dredge the stormwater ponds that you own for increased capacity. We have a suggestion, which we respectfully offer:
>
> Is it possible that Heritage Group could make a preemptive statement and submit it to the county before the April 18 public hearing, something along these lines:
>
> "It is the recommendation of the Heritage Group that if additional development is approved on the Tennis Club Property that the property provide a stormwater retention pond on the development property."

Later, Ms. Hurley sent other emails on this same topic to the Heritage Group, stating the HOA "is concerned with drainage issues on the proposed rezone site, especially now that it includes the full 11.3 acres."

Ultimately, the Tennis Club withdrew its rezoning application with Sarasota County.

In November of 2019, the Tennis Club filed a complaint against the HOA and Ms. Gerritsen, generally alleging that the HOA and five of its directors (including Ms. Gerritsen) were responsible for the Tennis Club's inability to sell its property to Taylor Morrison or to Mr. Mitchell. The Tennis Club further claimed that the HOA, through Ms. Hurley, effectively breached the 1992 maintenance agreement which precluded the HOA from "challeng[ing] a petition for such rezoning on any drainage-related issue." In the Tennis Club's operative complaint, count I alleged

5

tortious interference; count II asserted a claim that the HOA violated the Florida Deceptive and Unfair Trade Practices Act (FDUTPA); count III was for breach of contract (based on the 1992 maintenance agreement); and count IV sought declaratory judgment about whether there was a contractual basis to recover attorney's fees.

The parties engaged in discovery, and on January 21, 2022, the HOA and Ms. Gerritsen filed a motion for summary judgment as to all the counts of the complaint. On June 24, 2022, the circuit court entered a final summary judgment against the Tennis Club. As to count I, the court concluded that the Tennis Club's evidence was insufficient to show that the failure of either Taylor Morrison or Mr. Mitchell to close on their respective contracts with the Tennis Club was due to the defendants' actions. Similarly, the court found there was insufficient evidence of causation to prove a violation of FDUTPA. As to count III, the court determined that the Tennis Club failed to provide evidence that the HOA had committed a breach of the 1992 maintenance agreement. Finally, the court concluded there was no justiciable controversy before the court that warranted declaratory relief.

The Tennis Club has timely appealed the circuit court's summary judgment. Our review is de novo. *Cole v. Plantation Palms Homeowners Ass'n*, 371 So. 3d 413, 416 (Fla. 2d DCA 2023). "Under the new [2021 amendment] summary judgment standard, summary judgment is warranted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Pio v. Simon Cap. GP*, 366 So. 3d 1200, 1203 (Fla. 2d DCA 2023) (quoting Fla. R. Civ. P. 1.510(a)). Under the federal (and now Florida) summary judgment standard, the moving party bears the initial burden

6

of showing that there are no genuine issues of material fact that should be decided at trial.  *See id.*

From our de novo review, we cannot say that the HOA and Ms. Gerritsen met their initial burden with respect to the first count of the Tennis Club's complaint.  We have previously summarized the elements of a tortious interference claim:

> In order to state a cause of action for tortious interference, a plaintiff must allege: (1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damages to the plaintiff as a result of the breach of the relationship.

*Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla., Inc.*, 832 So. 2d 810, 814 (Fla. 2d DCA 2002) (citing *Tamiami Trail Tours, Inc. v. Cotton,* 463 So. 2d 1126, 1127 (Fla. 1985); *Sec. Title Guarantee Corp. of Balt. v. McDill Columbus Corp.,* 543 So. 2d 852, 854 (Fla. 2d DCA 1989)).  There does not appear to be any serious dispute over the first two elements in this case.

The third element, however, is hotly disputed.  Although the HOA has a right of first refusal to purchase the Tennis Club's property, it does not have a right to intentionally and unjustifiably interfere with the Tennis Club's contracts in order to gain leverage and get a better price to buy the Tennis Club's property for itself.  In our view, there are material facts that support the Tennis Club's allegations on this element—evidence of alleged misrepresentations, concealment of board activities, misleading communications, and overt conduct—that could, if proven, satisfy the third element of the Tennis Club's intentional interference claim.  *See Howard v. Murray,* 184 So. 3d 1155, 1167 (Fla. 1st DCA 2015) ("[A]ny determination whether a defendant acted without

7

justification is also highly fact dependent and 'requires an examination of the defendant's "conduct, its motive, and the interests it sought to advance." ' " (quoting *McDill Columbus Corp.*, 543 So. 2d at 855)).

There are also material facts in dispute as to the fourth element, whether the defendants' actions were the cause of Taylor Morrison and Mr. Mitchell terminating their respective contracts with the Tennis Club. Causation is often a contested factual issue. *See* Restatement (Second) of Torts § 766 cmt. o (Am. L. Inst. 1979) ("The question whether the actor's conduct caused the third person to break his contract with the other raises an issue of fact."). We note that the termination of the two contracts practically coincided with the alleged actions of the defendants. And both contract purchasers, Taylor Morrison and Mr. Mitchell, cited issues with the HOA when they decided not to close. It appears the circuit court may have been persuaded that because neither of these parties laid the entirety of the blame, as it were, on the defendants, there was no issue of disputed fact about causation. To the extent that was the circuit court's view it was an erroneous one. *See Ariz. Chem. Co. v. Mohawk Indus., Inc.*, 193 So. 3d 95, 103 (Fla. 1st DCA 2016) ("The plaintiff need not show that the defendant's action was the sole cause of the damages sought . . . ."); *Cedar Hills Props. Corp. v. E. Fed. Corp.*, 575 So. 2d 673, 678 (Fla. 1st DCA 1991) ("In all cases involving problems of causation and responsibility for harm, a good many factors have united in producing the result; the plaintiff's total injury may have been the result of many factors in addition to the defendant's tort or breach of contract. . . . In order to establish liability the plaintiff must show that the defendant's breach was a 'substantial factor' in causing the injury." (quoting 5 Corbin on Contracts § 999 (1964))); Fla. Std. Civ. Jury Instr. 408.4b n.2 ("Instruction 408.4b (concurring cause) . . . does not set forth

8

any additional standard for the jury to consider in determining whether the tortious interference with a business or contractual relationship was a legal cause of damage, but only negates the idea that a defendant is excused from the consequence of his or her tortious interference with a business or contractual relationship because of some other cause concurring in time and directly contributing to the same damages or loss."). From our review of the record, the defendants failed to satisfy their initial summary judgment burden on this element of count I.

Similarly, there were material facts in dispute in count III. Board member Ms. Hurley sent an email to the Tennis Club's neighbor suggesting it should object to the Tennis Club's rezoning petition because of potential drainage issues—and went so far as to include proposed language for that neighbor to use in an objection. Regardless of how widespread that communication may have circulated or whether it was ultimately effective, that email was evidence from which a factfinder could conclude that the HOA breached the 1992 maintenance agreement.

As to the remaining counts, we affirm the court's summary judgment as to the Tennis Club's FDUTPA claim, count II, under the authority of *Applegate v. Barnett Bank of Tallahassee*, 377 So. 2d 1150, 1152 (Fla. 1979). *See also Rebman v. Follett Higher Educ. Grp., Inc.*, 575 F. Supp. 2d 1272, 1279 (M.D. Fla. 2008) ("Brandner and Rebman challenge the act of breaching the Agreement as unfair or deceptive rather than the act giving rise to the breach. This is precisely the type of breach of contract claim that cannot be converted to a claim under FDUTPA. . . . In order to assert proper FDUTPA claims, Brandner and Rebman must have shown that the *acts underlying* the breach of contract are, by themselves, unfair or deceptive."); *Spiegel, Inc. v. F.T.C.*,

9

540 F.2d 287, 293 (7th Cir. 1976) ("A practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."); *Bessinger v. Food Lion, Inc.*, 305 F. Supp. 2d 574, 583 (D.S.C. 2003) ("Yet, South Carolina law is clear: even an intentional breach of contract, absent an adverse public impact, will not support a cause of action under the SCUTPA."). We affirm the summary judgment as to count IV without further comment.

Affirmed in part; reversed in part; remanded.

CASANUEVA and LABRIT, JJ., Concur.

_____